MERLITE INDUSTRIES, INC. (AND WHOLLY-OWNED SUBSIDIARY, MERLITE COMMERCIAL CORP.), Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Merlite Industries, Inc. v. Commissioner
Docket No. 7908-72.
United States Tax Court
T.C. Memo 1975-312; 1975 Tax Ct. Memo LEXIS 62; 34 T.C.M. (CCH) 1361; T.C.M. (RIA) 750312; October 15, 1975, Filed John F. Walsh,David A. Zack and Leonard A. Blank, for the petitioner. William K. Carr, for the respondent. QUEALY
MEMORANDUM FINDINGS OF FACT AND OPINION QUEALY, Judge: The respondent determined deficiencies in income taxes due from Merlite Industries, Inc., and its subsidiary, Merlite Commercial Corp., for the fiscal years ended July 31, 1966, and July 31, 1967, in the amounts of $2,097.42 and $23,948.69, respectively. The issues for our decision are as follows: 1. Whether petitioner is entitled to bad debt deductions under section 166 [1] in the amounts of $115,762.04 and $41,605.20 for the fiscal years ended July 31, 1966, and July 31, 1967, respectively, *64 on account of advances to L. M. Stylists, Inc.
2. Whether, if the advances by petitioner to L. M. Stylists, Inc. were contributions to capital, the petitioner is entitled to claim an ordinary loss pursuant to section 165(g)(3) for the fiscal year ended July 31, 1967. 3. Whether the petitioner was affiliated with L. M. Stylists, Inc. within the purview of sections 1501 and 1504 so that the gross income and deductions of L. M. Stylists, Inc. may be included in the consolidated returns filed by petitioner for fiscal years ended July 31, 1966 and July 31, 1967. FINDINGS OF FACT Merlite Industries, Inc. (hereinafter referred to as the petitioner) and its wholly-owned subsidiary, Merlite Commercial Corp., are corporations organized under the laws of the State of New York. At the time of the filing of the petition in this case, the principal office of the petitioner was in New York, New York. The petitioner kept its books and records and filed its returns on the accrual basis, based on a fiscal year ended July 31. Petitioner and its subsidiary filed consolidated U. *65 S. corporation income tax returns for each of the fiscal years ended July 31, 1966, and July 31, 1967, with the District Director of Internal Revenue, Manhattan District, New York. During the years 1963 to 1969, inclusive, all of the capital stock of Merlite Commercial Corp. (hereinafter referred to as Merlite Commercial) was owned by petitioner. For the same period, all of the capital stock of petitioner was owned by one Alvin B. Meyer, who was and still is the chief executive officer and president of petitioner and Merlite Commercial. Alvin B. Meyer, together with Larry Matthews, also owned stock in All State Properties, a company which had acquired the Larry Matthews Beauty Salons. Larry Matthews was employed by All State Properties in 1963 as manager of its beauty salons and barber shop operations. Under a contract with Larry Matthews, All State Properties had the right to use his name. About 1963, it was suggested to Meyer that All State Properties open a wig department, using the name of Larry Matthews, as a concession in Gimbels Department Store. Meyer rejected the proposal. Thereafter, Larry Matthews advised Meyer that the concession was "too good a thing to turn away" *66 and, with the consent of All State Properties, Meyer decided that petitioner would undertake to set up the wig concession at Gimbels Department Store. Petitioner was to use the name of Larry Matthews. It was anticipated that All State Properties would benefit from the publicity which would result for its salons also doing business under the name of Larry Matthews. Petitioner proceeded to establish a wig division in order to open the concessions in the Gimbel stores. As of July 25, 1963, petitioner had invested $121,212 in its wig division to purchase inventory and to open concessions. L. M. Stylists, Inc. was incorporated on July 25, 1963, under the laws of the State of New York to carry on the business of the wig division. The Certificate of Incorporation of L. M. Stylists, Inc. authorized the issuance of 200 shares of common stock without par, of which 100 shares were issued to petitioner and 100 shares were issued to or in the name of Larry Matthews. Larry Matthews signed a receipt for stock certificate No. 2 for 100 shares and the stock transfer ledger of L. M. Stylists, Inc. indicates that such certificate was issued to Matthews on July 25, 1964. The assets and liabilities *67 of the wig division of petitioner were transferred to L. M. Stylists, Inc. The amounts previously invested by petitioner in its wig division were recorded as a loan payable to petitioner on the books of L. M. Stylists, Inc. and as a loan receivable on the books of petitioner, except for the amount of $1,000 which was recorded as capital stock on the books of L. M. Stylists, Inc. and an investment in L. M. Stylists, Inc. stock on the books of petitioner. As a concessionaire in the Gimbel stores, L. M. Stylists, Inc. was required to comply with the sale policies of Gimbels. Pursuant to such policies, the customer was permitted to return merchandise for credit. L. M. Stylists, Inc. found that it was accepting for return approximately 25 percent of the wigs sold. Health regulations prohibited the resale of those wigs. The operation of wig concessions by L. M. Stylists, Inc., resulted in substantial losses on that account. In addition to the original investment of $121,212 in the wig division, carried over as a loan to L. M. Stylists, Inc., the loan account of petitioner with L. M. Stylists, Inc., during the fiscal years ended July 31, 1964, to July 31, 1967, reflected the following: *68 Taxable Year Ended
Advances
Repayments
July 31, 1964
$23,000
$13,212
July 31, 1965
None
21,000
July 31, 1966
None
5,000
July 31, 1967
None
None
Totals
$23,000
$39,212
Additional advances were made by Merlite Commercial to L. M. Stylists, Inc., during the fiscal years ended July 31, 1963, to July 31, 1967, as follows: Taxable Year Ended
Advances
July 31, 1963
$18,000
July 31, 1964
None
July 31, 1965
35,000
July 31, 1966
5,000
July 31, 1967
3,000
Totals
$61,000
The assets and liabilities of L. M. Stylists, Inc. as reflected in its U.S. corporation income tax returns filed for the fiscal years ended July 31, 1964 to July 31, 1967, inclusive, were as follows: Assets
1964
1965
1966
1967
Cash
$ 17,883
$ 17,171
$ 318
$ 6,151
Notes and Accounts
Receivable
58,007
61,155
66,042
2,642
Inventories
74,937
106,382
65,680
0
Other Current Assets
12,240
14,639
7,484
2,049
Other Investments
0
100
772
0
Buildings & Other
Depreciable Assets
811
2,159
3,782
0
Total assets
$163,878
$201,606
$ 144,078
$ 10,842
Liabilities and Capital
Accounts Payable
$ 5,413
$ 27,920
$ 27,945
$ 3,192
Other Current Liabilities [2]
165,574
190,095
195,048
161,734
Capital Stock - Common
2,000
2,000
2,000
2,000
Earned Surplus
(9,109)
(18,409)
(80,915)
(156,084)
Total Liabilities
and Capital
$163,878
$201,606
$ 144,078
$ 10,842
*69 The funds transferred by petitioner and Merlite Commercial to L. M. Stylists, Inc. were recorded as "Loans Payable", classified as current liabilities on the books, financial statements and Federal income tax returns of L. M. Stylists, Inc. for the fiscal years ended July 31, 1963 to July 31, 1967, inclusive, and as "Loans Receivable" on the books, financial statements and Federal income tax returns of petitioner and Merlite Commercial for the same period. Neither petitioner nor Merlite Commercial received any other evidence of indebtedness from L. M. Stylists, Inc. for the amounts transferred. If petitioner was required to borrow funds for transfer to L. M. Stylists, Inc. it would charge L. M. Stylists, Inc. whatever interest it was charged. Most of the transfers, however, came from the petitioner's own funds. On the consolidated U.S. corporation income tax returns for the fiscal years ended July 31, 1966, and July 31, 1967, petitioner and Merlite Commercial deducted as bad debts the amounts of $115,762.04 and $41,605.20, respectively *70 on account of the advances to L. M. Stylists, Inc.[3]
In his notice of deficiency the respondent disallowed the bad debt deductions and determined that the amounts advanced by petitioner and Merlite Commercial to L. M. Stylists, Inc. constituted contributions to capital. As a result of this determination, respondent also made adjustments in regard to the petitioner's allowable contributions and net operating loss deduction. Upon incorporation of L. M. Stylists, Inc., Larry Matthews was appointed chairman of the board of directors and at the first meeting of the board he was elected president of the corporation. The minutes of that first meeting were signed by Matthews as chairman and president. The minutes of the first stockholders' meeting were signed by Matthews as chairman. An application for a certificate of authority to transact business in Wisconsin was signed by him as president. A resolution of L. M. Stylists, Inc., designating a depository *71 of funds reflects Larry Matthews as being president. At a date subsequent to June 30, 1964, Larry Matthews became vice-president of L. M. Stylists, Inc., and Alvin B. Meyer became president. During these years Larry Matthews made personal appearances on behalf of L. M. Stylists, Inc., advertising the product. The U.S. corporation income tax returns of L. M. Stylists, Inc., for the fiscal years ended July 31, 1964, to July 31, 1966, inclusive, reflect Matthews as owning 50 percent of the shares of L. M. Stylists, Inc., and reflect "capital stock" of $2,000 and "subscriptions receivable - capital stock" of $1,000. The return for the fiscal year ended July 31, 1967, reflects "capital stock" of $2,000 and "subscriptions receivable - capital stock" of $0.00. During the fiscal year ended July 31, 1967, L. M. Stylists, Inc., sold off all of its inventory. On August 27, 1968, Alvin B. Meyer and Larry Matthews, purporting to be the sole shareholders of L. M. Stylists, Inc., elected to dissolve that corporation. OPINION
Petitioner organized L. M. Stylists, Inc. on July 25, 1963, for the purpose of carrying on the wig concession begun by the petitioner through one of its divisions. *72 Its capital was stated to be $2,000, of which $1,000 was represented by $1,000 of a total of $121,212 which had been invested by the petitioner in its wig division. The remaining $1,000 was not paid in at that time. Subsequently, petitioner and Merlite Commercial advanced additional sums totalling $84,000 to L. M. Stylists, Inc., and received back $39,212. For the fiscal years ended July 31, 1964, 1965, 1966, and 1967, L. M. Stylists, Inc. had losses of $9,109, $9,300, $62,506, and $75,169, respectively. Petitioner seeks to deduct the outstanding loans due from L. M. Stylists, Inc. as of July 31, 1966, and as of July 31, 1967, as bad debts within the meaning of Section 166. The question of whether petitioner's investment in L. M. Stylists, Inc. became worthless during a given taxable year is a question of fact. While the respondent in his notice of deficiency impliedly agreed that the petitioner's investment in L. M. Stylists, Inc. became worthless during the fiscal year ended July 31, 1967, he puts it at issue in his brief. Although the stockholders of L. M. Stylists, Inc. did not elect to dissolve the corporation until August 27, 1968, it is apparent from the balance sheets, *73 per returns, that for all practical purposes, the corporation was insolvent and the stock worthless as of July 31, 1967. During that year, L. M. Stylists, Inc., sold off all of its inventory and ceased doing business. There could no longer be any reasonable expectation that the stock would have any value. See Sterling Morton,38 B.T.A. 1270 (1938), affd. 112 F.2d 320 (7th Cir. 1940). Whether the transfer of funds to a corporation by its stockholder gives rise to a debt or a capital contribution depends on the facts. Gooding Amusement Co. v. Commissioner,236 F. 2d 159 (6th Cir. 1956), affirming 23 T.C. 408 (1954), cert. denied 352 U.S. 1031 (1957); Martin M. Dittmar,23 T.C. 789 (1955). The fact that the sums advanced to L. M. Stylists, Inc., were designated as loans, is not determinative of the question. Sam Schnitzer,13 T.C. 43 (1949), affd. per curiam 183 F.2d 70 (9th Cir., 1950), cert. denied 340 U.S. 911 (1951). The courts have looked to, *74 among other things, the adequacy of initial capital, whether outside sources would have made the advances under the facts presented, whether security was given, whether the notes were subordinated to other indebtedness, the extent to which initial advances were used to acquire capital assets, the form of the instruments and whether any repayments were made. See Gilbert v. Commissioner,248 F.2d 399 (2d Cir. 1957), and 262 F.2d 512 (2d Cir. 1959), cert. denied 359 U.S. 1002 (1959). In this case, however, such criteria -- while not supportive of the petitioner -- are overshadowed by the fact that L. M. Stylists, Inc. was, for all practical purposes, insolvent from the outset, unless the so-called "loans" by petitioner and Merlite Commercial are deemed to be capital contributions. The contributions by or on behalf of the petitioner were the only source to which the creditors could look for the payment of their claims. Any claims which petitioner or Merlite Commercial could have asserted against L. M. Stylists, Inc. would be subordinate to the claims of its commercial creditors. Albert Richards Co. v. The Mayfair,287 Mass. 280, 191 N.E. 430 (1934). *75 Cf. Erickson v. Minnesota & Ontario Power Co.,134 Minn. 209, 158 N.W. 979 (1916); Orinetal Investment Co. v. Barclay,64 S.W. 80 (Tex. Civ. App. 1901); Joseph R. Foard Co. v. State of Maryland,219 F. 827 (4th Cir. 1914). See Pepper v. Litton,308 U.S. 295 (1939); Taylor v. Standard Gas Co.,306 U.S. 307 (1939); Heisler v. Halbertstam,343 N.Y.S. 2d 809 (N.Y. County Civil Ct. 1973). [4]
As of July 31, 1967, the petitioner claimed bad debt losses aggregating $157,367.24 on account of the advances to L. M. Stylists, Inc. As of the same date, the deficit in earnings in L. M. Stylists, Inc., totalled $156,084. The advances made by petitioner had been placed at the risk of the business, and barely covered its losses. Capitalization was nominal. The advances clearly constituted additional contributions to capital. Petitioner alternatively contends that if the transfers are considered to be capital contributions, then the deduction *76 is governed by section 165(g)(3). Section 165(g)(1) provides for a capital loss deduction if a security, which is deemed to be a capital asset, becomes worthless during the taxable year. Section 165(g)(3) provided an exception to this rule, as follows: (3) Securities in affiliated corporation.-- For purposes of paragraph (1), any security in a corporation affiliated with a taxpayer which is a domestic corporation shall not be treated as a capital asset. For purposes of the preceding sentence, a corporation shall be treated as affiliated with the taxpayer only if-- (A) at least 95 percent of each class of its stock is owned directly by the taxpayer, and, (B) more than 90 percent of the aggregate of its gross receipts for all taxable years has been from sources other than royalties, rents (except rents derived from rental of properties to employees of the corporation in the ordinary course of its operating business), dividends, interest (except interest received on deferred purchase price of operating assets sold), annuities, and gains from sales or exchanges of stocks and securities. *77 In computing gross receipts for purposes of the preceding sentence, gross receipts from sales or exchanges of stocks and securities shall be taken into account only to the extent of gains therefrom. It is the petitioner's position that it owned 100 percent of L. M. Stylists, Inc., notwithstanding the fact that 100 shares constituting 50 percent ownership were shown to have been issued to Larry Matthews. Petitioner contends that Larry Matthews never paid for the stock and therefore was not a stockholder. With certain exceptions not applicable here, New York law provides that certificates for shares shall not be issued until the full amount of the consideration therefor has been paid. N.Y. Bus. Corp. Law, Sec. 504(h) (McKinney 1963). Under New York law, however, shares so issued would not be void but merely voidable. Eisenberg v. Grossman,84 N.Y.S. 2d 118 (S.Ct. 1948), revd. on other grounds, 89 N.Y.S. 2d 787 (App. Div.2d Dept. 1949). See Bonsall v. Commissioner,317 F.2d 61 (2d Cir. 1963), affirming a Memorandum Opinion of this Court. *78 Larry Matthews considered himself to be a stockholder and L. M. Stylists, Inc., treated him as one. His participation in the corporation included acting as chairman of the board and as president and subsequently as vice-president. The stock certificate book and stock transfer ledger clearly indicate that certificate number 2 for 100 shares was issued to Larry Matthews. The stock certificate book shows him to have signed a receipt for such certificate. The U.S. corporation income tax returns of L. M. Stylists, Inc. list Larry Matthews as having 50 percent of the stock of L. M. Stylists, Inc. On August 27, 1968, acknowledging himself to be one of the sole stockholders of the corporation, Larry Matthews signed the stockholders' election of dissolution. Considering that no action was ever taken to void the shares issued to Larry Matthews and that he was treated as a stockholder of L. M. Stylists, Inc. from its inception up to and including its dissolution, there is no basis for this court to find that he was not a shareholder of L. M. Stylists, Inc. for the years in issue. See Sarasohn v. Andrew Jergens Co.,45 N.Y.S. 2d 888 (S.Ct. 1943); Kimmel Sales Corporation v. Lauster,167 Misc. 514, 4 N.Y.S. 2d 88 (S.Ct. 1938). *79 Although the contributions to the capital of L. M. Stylists, Inc., by petitioner far exceeded that of Larry Matthews, the 100 shares owned by petitioner are not entitled to any greater weight or right in ownership than the 100 shares owned by Larry Matthews. N.Y. Bus. Corp. Law, Sec. 501(c) (McKinney 1963). We therefore conclude that petitioner did not own at least 95 percent of the stock of L. M. Stylists, Inc. as required by section 165(g)(3)(A) so as to be entitled to an ordinary loss deduction. The petitioner as a second alternative contends that it should now be allowed to include in its consolidated returns for the fiscal years ended July 31, 1966, and July 31, 1967, the income and deductions of L. M. Stylists, Inc. For the reasons stated above the petitioner was not an 80 percent owner of L. M. Stylists, Inc. and therefore was not entitled to file a consolidated return therewith. Section 1504(a). Decision will be entered for the respondent.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
2. For these years "Other Current Liabilities" reflect "Loans Payable" in the amounts of $152,291, $172,000, $170,070, and $160,734, respectively.↩
3. While the advances to L. M. Stylists, Inc. from Merlite and Merlite Commercial do not reconcile with the bad debt deductions taken, neither the amount claimed as advances nor the amount claimed as deductions are in dispute.↩
4. See also Parent Corporation's Claims in Bankruptcy of Subsidiary: Effect of Fiduciary Relationship, 54 Harv. L. Rev. 1045↩ (1941).