ALGOT ERICKSON v. MINNESOTA & ONTARIO POWER COMPANY.[1]

July 28, 1916.

Nos. 19,689—(90).

**Action for flooding land — evidence.**

1. There was evidence from which a jury might determine that plaintiff's land was overflowed for two seasons and that the overflow was caused by a dam in the Rainy River.

**Water and watercourse — natural level — right of riparian owner.**

2. The owner of land abutting upon a lake or stream is entitled to have the water maintained at the natural and ordinary level at all times. There is evidence that the operation of the dam raised the water above its natural and ordinary level.

**Owner of dam liable — act of Congress.**

3. Congress authorized the raising of the water to the point to which it was raised, but this does not relieve the dam owner from liability, since the legislation provided that it did not relieve against liability for damage to private property.

**Act of Congress — flowage of land once in public domain.**

4. The legislation of Congress did not grant any right of flowage of land now privately owned, but which at the time of its enactment was government land.

**Corporation — stock control — liability of owner.**

5. The fact that one corporation owns all the stock of another does not make them the same, nor does it pass to one the property of the other, nor render one liable for the acts of the other. Still one corporation may be the agent of another. The facts in evidence, taken all together, are sufficient to sustain a finding that the Rainy River

[1] Reported in 158 N. W. 979.

134 M.—14.

Improvement Company, which built and which operates the dam, is a mere agency of the defendant, for the benefit of whose property and business the dam was constructed and is operated.

**New trial — when granted.**

6. A plaintiff, whose cause has been erroneously dismissed, will not be granted a new trial in order to give him merely nominal damages, where there is no other right involved. But where the evidence shows that substantial damage has been suffered, though the amount has not been proved, or where a verdict for plaintiff would determine some matter of substantial right, a new trial should be granted.

Action in the district court for Koochiching county to recover $3,000 for operating defendant's dam so as to flood plaintiff's land. The answer set up the several acts of Congress authorizing the construction of the dam, and alleged that, at the time of the passage of the acts and of the approval of the plans of the dam, the land described in the complaint was the property of the United States, and if plaintiff had any interest therein he acquired it from the United States, after the passage of the acts of Congress and of the approval of the plans of the dam. The answer also set up the treaty between the United States and Great Britain proclaimed in May, 1910, relating to boundary waters, and that this action involved the construction of the treaty, the acts of Congress, the acts of Parliament and the acts of the legislature of Ontario, and that under those laws and that treaty the owner was required to maintain the stage of water described, and prayed for a temporory injunction restraining plaintiff from proceeding with the action. The case was tried before Stanton, J., who when plaintiff rested granted defendant's motion to dismiss the action. From an order denying his motion for a new trial, plaintiff appealed. Reversed and new trial granted.

*John E. Samuelson, J. E. Lundrigan, Warner E. Whipple* and *Frank E. Randall,* for appellant.

*Harris Richardson, Walter Richardson* and *C. J. Rockwood,* for respondent.

HALLAM, J.

Plaintiff owns a tract of land near Rainy Lake. Some of it abuts upon Jackfish Bay, an arm of Rainy Lake. The outlet of Rainy Lake into

Rainy River is a short distance from plaintiff's land. A dam is thrown across Rainy River about three miles from the outlet of the lake. In the seasons of 1912 and 1913 plaintiff's land was flooded. He sues defendant for damages. The court dismissed the action at the close of plaintiff's case. Plaintiff appeals.

Plaintiff makes these claims:

That his land was overflowed and that the cause of the flowage was the negligent operation of the dam.

That the defendant is an owner or joint owner of the dam and is responsible for its operation.

Defendant denies both claims and alleges:

That the dam was constructed under the authority of the United States and Canada and that the owners thereof were authorized to construct it so as to raise the water to a certain level, which level has not been exceeded, and that by virtue of such authority no private right of damage can be sustained.

That plaintiff acquired his land from the United States government after the government authorized the dam, and took it subject to the right conferred by the government to raise the water as above stated.

That plaintiff failed to prove any damage.

1. The trial court was of the opinion that there was evidence in the case from which a jury might determine that plaintiff's land was overflowed during the cropping season of 1912 and 1913, and that the overflow was caused by the operation of the dam. In this we concur. The evidence was very voluminous and cannot be briefly analyzed, and we forbear any attempt to do so. We have examined it with care and have reached the conclusion stated.

2. The trial court was unable to sustain the contention made by defendant that plaintiff could have no cause of action except for flowage due to raising the water above the level authorized by Congress. This level was at first fixed at high water mark. Act of June 28, 1902 (32 St. p. 485, c. 1305), and was later fixed at such level as the secretary of war might approve. Act of February 25, 1905 (33 St. p. 814, c. 797). The water was not raised above the level authorized by Congress. We concur in the view of the trial court upon this point. A dam owner has no right to maintain his dam at such height that it will set back the water upon

the proprietor above him. Ames v. Cannon River Mnfg. Co. 27 Minn. 245, 247, 6 N. W. 787. The owner of land abutting upon a lake or stream is entitled to have the water maintained at the natural and ordinary level at all times, and this rule applies to ordinary low water and ordinary high water. Allen v. Thornapple Electric Co. 144 Mich. 370, 373, 108 N. W. 79, 115 Am. St. 453. The natural and ordinary level of the water is the level that it maintains under the ordinary operation of the physical laws which affect it. This may be different at different seasons of the year. It may be high a portion of the season and low at another portion, and at another it may be at a medium stage, yet, as these are ordinary by reason of their natural or frequent occurrence, they are the natural condition of the stream. Dorman v. Ames, 12 Minn. 347, 363 (451, 464). There is evidence in this case that the operation of the dam raised the water above its natural or ordinary level.

3. We need not discuss the question whether Congress might authorize a dam owner to raise the water above its natural level, and at the same time absolve him from liability for damage to private interests that might be injured thereby. Congress has not attempted to do this. The act of Congress of June 28, 1902, above cited, provided "that nothing in this Act contained shall be construed as relieving the Koochiching Company, its successors or assigns, from liability for any damage inflicted upon private property by reason of the raising of the waters of the lake as aforesaid." A general act, approved June 21, 1906 (34 St. p. 386, c. 3508, § 3), provided "that the person, company, or corporation building, maintaining, or operating any dam and appurtenant works, under the provisions of this Act, shall be liable for any damage that may be inflicted thereby upon private property, either by overflow or otherwise." By an act approved May 23, 1908 (35 St. p. 273, c. 194), this dam is to be constructed and maintained in accordance with the provisions of the act of 1906. The language of these acts distinctly recognize the fact that damage to private property may ensue from the dam which the statutes authorize, and they preserve liability therefor.

4. Defendant contends that, since plaintiff's land was government land at the time Congress granted the right to construct the dam, and since plaintiff acquired the same by homestead entry thereafter, he took the land subject to any right of flowage incident to the raising of the

water to the height authorized by Congress. We do not understand that this legislation impressed government land with any such easement. Nor is this to be inferred from the language of the acts above quoted, preserving liability for damages inflicted upon "private property." This was not intended to limit liability to cases of damage to land then privately owned.

5. Whether defendant is responsible for the damage done by the dam is another question. The facts are as follows:

The dam was constructed on the American side by the Rainy River Improvement Company, a Minnesota corporation, and on the Canadian side by the Ontario and Minnesota Power Company, Limited, a Canadian corporation, and it is operated by these two corporations. Both are doubtless liable for any unlawful or negligent act incident to its operation, or if defendant is responsible for the doings of the Rainy River Company, then it is liable for such unlawful or negligent acts.

Congress granted, first to the Koochiching Company, its successors, or assigns and later to its successor, the Rainy River Improvement Company, the right to construct a dam on this site. 30 St. 398, c. 238; 31 St. 167, c. 346; 32 St. 485, c. 1305; 33 St. 814, c. 797; 34 St. 386; 35 St. 273, c. 194. On October 1, 1908, defendant acquired, and has since owned, the land at the American end of the dam. On that day it entered into a contract with the Rainy River Improvement Company, by which it gave to that company the right to construct and perpetually maintain the dam abutting upon the land in Minnesota. Work on the dam had already been begun, under what arrangement it does not appear. The construction of the dam proceeded and the dam was completed and has since been operated, so far as the American portion was concerned, pursuant to said contract.

By the terms of this contract defendant approved the plans adopted for the construction of the dam. By its terms defendant agreed to advance the entire cost of the dam in the form of an interest bearing loan secured by a mortgage. The money was advanced and the mortgage given. The mortgaged property is described as the dam and all rights and easements in and upon the land upon which it is located, and all privileges arising out of the instruments mentioned or acquired by virtue of the acts of Congress. No other property is described, though the mort-

gage in general terms covers all other property of the mortgager of every name and nature. By the terms of the contract defendant agreed to pay, and has paid, annually the sum of $4,000 to maintain the expense of the dam. By this contract defendant reserved to itself the right to use for power purposes all the water passing over the dam, and the right to the exclusive use and possession of the land and power houses, and the right to place, set, use and control the water wheels, flumes, intake pipes, draft tubes, racks, gates and all other machinery and appliances. No rent or other charge was paid for this exclusive use, and no revenue is derived therefrom. Defendant has built and operates extensive mills and uses all the power generated by the dam on the American side. In a trust deed which defendant gave October 1, 1908, upon its property, defendant recited that it was "constructing" said dam and that it desired to "borrow money" for, among other things, "the construction of dams." Defendant owns all the stock in the Rainy River Improvement Company and the Ontario and Minnesota Power Company, Limited. The same man, E. W. Backus, is the president of defendant and also of the Rainy River Improvement Company, in fact of all four corporations mentioned.

Are these facts such as to sustain a finding that defendant is liable for the acts of the Rainy River Improvement Company in the operation of the dam? We are of the opinion that they are. There is no doubt that the two corporations are separate entities. The fact that defendant owns all the stock in the Rainy River Improvement Company does not make them the same. State v. Chicago & N. W. Ry. Co. 133 Minn. 413, 158 N. W. 627; Minneapolis Civic & Commerce Assn. v. Chicago, M. & St. P. Ry. Co. supra, page 169, 158 N. W. 817; nor does it pass to one the property of the other; nor render one liable for the acts of the other. Still one corporation may be the agent of another, just as one individual may be the agent of another. The question is this: Would all the facts taken together sustain a finding that the Rainy River Improvement Company, while a separate corporate entity, was still a mere agency of the defendant? It seems clear that they would. See Southern Pacific Terminal Co. v. Interstate Comm. Comm. 219 U. S. 498, 521, 31 Sup. Ct. 279, 55 L. ed. 310, et seq.; U. S. v. Delaware, L. & W. R. Co. 238 U. S. 516, 529, 35 Sup. Ct. 873, 59 L. ed. 1438.

6. It follows from what we have said that plaintiff has made out a

*prima facie* case, and that the court was in error in dismissing the action. It is contended, however, that plaintiff made no proof of the amount of his damage. This is doubtless true. It is further contended that he could, accordingly, in no event recover more than nominal damages and that a reversal will not be ordered in order to give merely nominal damages.

The decisions in this state upon this subject are not altogether in harmony.

In Potter v. Mellen, 36 Minn. 122, 30 N. W. 438, and Farmer v. Crosby, 43 Minn. 459, 45 N. W. 866, it was held that there should be a reversal for an error which deprives a plaintiff of his right to recover even nominal damages if the recovery of nominal damages would carry costs. This would include all cases of erroneous dismissal.

In U. S. Express Co. v. Koerner, 65 Minn. 540, 68 N. W. 181, 33 L.R. A. 600; Sloggy v. Crescent Creamery Co. 72 Minn. 316, 75 N. W. 225; Diamon v. Taylor, 99 Minn. 527, 109 N. W. 1133, and Foster v. Wagener, 129 Minn. 11, 151 N. W. 407, which were appeals on behalf of plaintiffs, it appeared that the damages could only be nominal and it was held that the principle *de minimis non curat lex* should apply, and that there should be no reversal for failure to give merely nominal damages. In Davis v. Haugan, 133 Minn. 423, 158 N. W. 705, the same rule was applied to a verdict for nominal damages in favor of plaintiff. In each of these cases the allowance of nominal damages would have carried costs. In none of these cases is the Potter case or the Farmer case referred to. All four are inconsistent with the rule of the Potter and Farmer cases. Both rules cannot stand. We must regard the Potter and Farmer cases as overruled.

In Harris v. Kerr, 37 Minn. 537, 35 N. W. 379, Hitchcock v. Turnbull, 44 Minn. 475, 47 N. W. 153, and Singer Mnfg. Co. v. Potts, 59 Minn. 240, 61 N. W. 23, it is held that a new trial will not be granted to a defendant for failure to allow him nominal damages on a counterclaim.

In Palmer v. Degan, 58 Minn. 505, 60 N. W. 342, where a verdict for plaintiff excessive in a nominal amount was rendered, the same rule was applied.

In Knowles v. Steele, 59 Minn. 452, 61 N. W. 557, and Minneapolis Baseball Co. v. City Bank, 74 Minn. 98, 105, 76 N. W. 1024, cases where

plaintiffs were asking for a new trial, the damages were of such a character that they might be substantial, but the evidence failed to show whether they were large or small, and the same rule was applied.

In Nickerson v. Wells-Stone Mercantile Co. 71 Minn. 230, 236, 73 N. W. 959, 74 N. W. 891, though the damages were plainly substantial, but the amount was not proven, the rule was applied. The fact that on rehearing a new trial was granted as to all issues leaves little force to this decision as authority.

In Warner v. Lockerby, 31 Minn. 421, 18 N. W. 145, 821, it was held that the rule that a new trial should not be granted because a verdict should have been given for plaintiff for nominal damages, should not be extended to cases "where some rule of law has been violated in the admission or rejection of evidence, or in expounding the law to the jury."

We think there is nothing in any of these decisions to interfere with our adopting what we conceive to be the proper rule, that is: Where there is no other right involved, a new trial should not be granted to a plaintiff because of an erroneous dismissal of his cause where it is plain that he could recover no more than nominal damages, or where, though the amount of the damage does not appear, there is nothing to make it appear that the damage that he suffered was substantial.

Where, however, plaintiff has made out a *prima facie* case and the evidence shows that substantial damages have been suffered, but through inadvertence or misjudgment, competent proof of the amount has not been made, a new trial should be granted. This principle is laid down in trenchant language in Thompson-Houston Electric Co. v. Durant Land Improvement Co. 144 N. Y. 34, 49, 39 N. E. 7. See also M'Carty v. Leggett, 3 Hill, 134; 1 Sutherland, Damages (3d ed.) § 11; 1 Sedgwick, Damages (9th ed.) § 109: We think such is the case here. It is clear that the damage plaintiff sustained was not nominal, but substantial. His proof failed probably because his attorney misconceived the true measure of his damage.

And, where a verdict in plaintiff's favor would determine some matter of substantial right, a new trial should be granted whether the amount of the damages proven is nominal or substantial. Harvey v. Mason City & Ft. Dodge R. Co. 129 Iowa, 465, 105 N. W. 958; Ellicottville & O. V. Plank Road Co. v. Buffalo & R. Co. 20 Barb. 644; Wartman v. Swindell,

54 N. J. Law, 589, 25 Atl. 356, 18 L.R.A. 44; 2 Sutherland, Damages (3d ed.) § 460. This rule has been impliedly approved by this court. Knowles v. Steele, 59 Minn. 452, 456, 61 N. W. 557; Goulding v. Ferrell, 106 Minn. 44, 117 N. W. 1046. A verdict of nominal damages in this case and judgment upon it would be an adjudication upon the questions of law which we have here considered, and would foreclose any question of easement or prescriptive right.

Order reversed and new trial granted.