L .& H AIRCO, INC. (formerly L & H Enterprises, Inc.), Respondent,

v.

RAPISTAN CORP., successor by merger to Lear Siegler, Inc., Mammoth Division, et al., Respondents (C2–88–1796), Defendants (C4–88–1878),

Alan C. Eidsness, et al., Petitioners, Respondents (C2–88–1796), Appellants (C4–88–1878),

Robert L. Michaud, Petitioner, Appellant (C2–88–1796), Respondent (C4–88–1878).

Nos. C2–88–1796, C4–88–1878.

Supreme Court of Minnesota.

Oct. 6, 1989.

Rehearing Denied Nov. 29, 1989.

Hart, Bruner & O'Brien, P.A., B.C. Hart, and Gregory T. Spalj, Minneapolis, for appellant, Robert L. Michaud.

Rider, Bennett, Egan & Arundel, Eric J. Magnuson, and Sheryl Ramstad Hvass, Minneapolis, for appellants, Alan C. Eidsness and Henson & Efrom, P.A.

LeFevre, Lefler, Kennedy, O'Brien & Drawz, James J. Thomson, Jr., Corrine A. Heine, and David C. Roland, Minneapolis, for respondent, L & H Airco.

Rider, Bennett, Egan & Arundel, Eric J. Magnuson, Sheryl Ramstad Hvass, Minneapolis, for respondents, Rapistan Corp. and Frank Manning.

KEITH, Justice.

We accelerated review of an order of the district court denying the defendants' separate motions for summary judgment and certifying as important and doubtful questions relating to arbitral immunity and an attorney's potential tort liability. We affirm in part and reverse in part.

Rapistan Corporation, the successor by merger to Lear Siegler, Inc., Mammoth Division (hereafter collectively designated as "Rapistan"), is engaged in the manufacture and sale of heating, ventilating and air-conditioning equipment. It entered an agreement in 1980 which designated L & H Airco, Inc. as its manufacturer's representative in the western United States. Rapistan terminated the agreement. As a result, L & H filed a complaint in February 1982 in the California Superior Court alleging breach of contract, breach of warranty, fraud and intentional and negligent interference with the business relationship. The California litigation was stayed when Rapistan exercised its right under a contract provision to have the dispute arbitrated in Minnesota. Rapistan then filed its claim for arbitration with the American Arbitration Association in Minnesota and retained the law firm of Henson & Efron, P.A. to represent it in the arbitration proceedings. Petitioner Alan C. Eidsness served as chief counsel in those proceedings. One of the three arbitrators selected from lists circulated among the parties was petitioner Robert L. Michaud, a registered professional engineer whose firm, Michaud, Cooley, Halberg, Erickson and Associates, specializes in the preparation of mechanical, electrical and communications systems for building construction projects. These consolidated proceedings all center upon Michaud's alleged business and social contacts with Rapistan through its officers and agents and matters related thereto.

The record discloses that in the past Michaud had drawn engineering specifications which allegedly favored Rapistan products on occasions unrelated to Rapistan's relationship with L & H Airco and that, socially, he had accepted invitations to Christmas parties and trips to Las Vegas, all prior to the notification on July 9, 1982 of his appointment as an arbitrator in the underlying proceedings. His appointment letter instructed him as follows:

> If you are able to accept appointment as one of the arbitrators in this case and have no association with either of the parties or their representatives which would disqualify you from serving, please execute and return one copy of the enclosed Notice of Appointment at your earliest convenience.

On July 14, Michaud executed the notice of appointment which contained the following caution:

> It is most important that the parties have complete confidence in the Arbitrator's impartiality. Therefore, please disclose any past or present relationship with the parties or their counsel, direct or indirect, whether financial, professional, social or other kind. Any doubt should be resolved in favor of disclosure.

Michaud did not disclose any of the prior business or social contacts with Rapistan, its officers or its agents.

In August 1982, three weeks prior to the scheduled arbitration proceeding, Michaud traveled to northern Canada on a fishing trip with three of Rapistan's agents—Frank Manning, Rapistan's president, Rod McKinley, Rapistan's national sales manager and Eugene Johnson, Rapistan's exclusive representative in Minnesota. The trip was arranged months before Michaud's arbitration appointment and Michaud claims that he did not know who would be traveling until the day of departure. Manning claims that prior to the trip, he had informed Rapistan's counsel Eidsness that

Michaud would attend the trip and inquired as to the propriety; he later was not as clear about whether the conversation occurred. Although Eidsness disputes whether the following conversation took place, Manning claims that he was informed that there would be no problem as long as there was no discussion of the pending arbitration. During the four day trip, the individuals fished and stayed together but claim that they did not discuss the pending arbitration.

The arbitration proceeding commenced as scheduled on September 27, 1982. During the course of the proceeding, Rapistan sought to add Manning and other Rapistan officers as defendants. When the arbitration panel requested that the parties stipulate to the naming of additional defendants, L & H agreed, later asserting that the agreement had been predicated on an express oral condition that none, of the additional defendants had any social or business contacts with the arbitrators. No disclosure was made of the fishing trip or of any of the other prior social or business contacts. L & H argues that it accordingly agreed to the naming of the additional parties.

In November 1982, the three member arbitration panel rendered its unanimous decision awarding no damages to either party. Thereafter, L & H commenced an investigation into the relationship between Rapistan and Michaud which disclosed the August 1982 fishing trip and the other prior contacts. L & H then brought a motion before the district court to vacate the arbitration award pursuant to Minn. Stat. § 572.19 (1988). Although the trial court found no evidence of actual bias in the arbitrators' decision, it was convinced that the fact of undisclosed social and business contacts required that the award be vacated and that the matter be rearbitrated.

A different arbitration panel considered the dispute in late 1985 resulting in an award in favor of L & H of damages of $219,990. The district court confirmed the award and directed the entry of judgment. Rapistan paid the judgment with interest.

This action was commenced in November 1987 by L & H against Rapistan, Manning, Eidsness, Henson & Efron, P.A. and Michaud alleging fraud, negligent misrepresentation and breach of covenants of good faith and fair dealing with regard to their failure to disclose the existing relationships. It claimed damages as a result of the expenses, disbursements and fees incurred in having the original award vacated and in participating by necessity in a second arbitration proceeding. The defendants moved for dismissal on the grounds that the complaint filed by L & H failed to state a claim upon which relief could be granted or, in the alternative, for summary judgment. The trial court granted Rapistan and Manning's motions to dismiss, but denied the motions of the defendants Eidsness and Michaud, certifying as important and doubtful the questions of whether Michaud was entitled to arbitral immunity and whether Eidsness could be subject to tort liability to his client's adversary for failing to divulge relevant information.[1] The separate appeals of Michaud and Eidsness were consolidated and their petitions for accelerated review were granted.

1. We first examine L & H's claim that the trial court erred in granting Rapistan and Manning's motion to dismiss its complaint which alleged fraud and negligent misrepresentation resulting in out-of-pocket damages incurred in connection with the required second arbitration proceeding. In concluding that the complaint failed to set forth a legally sufficient claim for relief, pursuant to Minn.R.Civ.P. 12.02, the trial court reasoned that a party cannot, in a subsequent action against the original adverse party, recover attorney

---

1. The following questions were certified pursuant to Minn.R.Civ.App.P. 103.03(h) as important and doubtful:

  1. Is the defendant Robert L. Michaud entitled to arbitral immunity against the claims asserted by the plaintiff in its complaint?

2. Is an attorney, who allegedly obtains information from a client in the course of his professional duties in contested legal proceedings, subject to tort liability to his client's adversary for failing to divulge that information to the adversary?

fees or litigation expenses incurred in that prior proceeding. *Stickney v. Goward*, 161 Minn. 457, 458–59, 201 N.W. 630, 630–31 (1925). *See also Smith v. Chaffee*, 181 Minn. 322, 324, 232 N.W. 515, 516 (1930). Rapistan and Manning were both parties to the two arbitration proceedings commenced by L & H. An exception to this rule may arise where the prior litigation and its resulting expenses were occasioned by the wrongful conduct of a non-party and the subsequent action to recover the fees and expenses is maintained against that non-party. *Hill v. Okay Constr. Co.*, 312 Minn. 324, 347, 252 N.W.2d 107, 121 (1977). However, the facts presented do not invoke that exception and the general rule is applicable to the claims asserted against Rapistan and Manning. *See Gilchrist v. Perl*, 387 N.W.2d 412, 418 (Minn.1986) (quoting *Chris/Rob Realty v. Chrysler Realty Corp.*, 260 N.W.2d 456, 460 (Minn.1977)).

In affirming the trial court's dismissal, we must comment that L & H was not without a remedy. First, pursuant to Minn.Stat. § 549.21 (1988), it could have asserted its motion for attorney fees and litigation expenses at the time it moved the district court to vacate the original award. *See generally* Minn.Stat. §§ 572.18–572.19 (1988). Alternatively, it might have relied upon the broad language of the arbitration agreement—"any controversy or claim arising or relating to this agreement shall be settled by arbitration * * * "—to assert that the tort claims were within the scope of the proceeding. Finally, costs and attorneys fees are recoverable pursuant to sections 43 and 50 of the AAA Commercial Arbitration Rules, which the parties agreed would govern their arbitration proceeding. *See also* Minn.Stat. § 572.17 (1988). In fact, L & H asserted claims for costs and attorneys fees at the second arbitration hearing including a claim of $27,540 for legal fees associated with the first hearing. The claim for those amounts was denied by the second arbitration panel. Thus, the maintenance of this independent action is not authorized and the district court was correct in dismissing the complaint against Rapistan and Manning.

2. We next consider the propriety of the trial court's denial of Michaud's motion for summary judgment and its certification as important and doubtful the question of whether he was entitled to arbitral immunity from the claims asserted by L & H in its complaint.

The parties to the underlying dispute in this case agreed to resolve their differences through binding arbitration under the rules of the American Arbitration Association (AAA). The original arbitration proceeding was instituted pursuant to those rules which required disclosure of any possible conflicts of interest. *See* AAA Commercial Arbitration Rules, Rule 19. It is undisputed that Michaud signed his appointment letter from AAA without disclosing therein his prior business and social contacts with Rapistan. Whether this failure is entitled to arbitral immunity from civil claims, whether of negligent misrepresentation or of fraud, is at issue.

■■■■ Arbitrators have long enjoyed immunity from civil suit. *Melady v. South St. Paul Live Stock Exchange*, 142 Minn. 194, 197, 171 N.W. 806, 807 (1919). Their immunity rests upon considerations of public policy, which has as its purpose the preservation of the integrity and independence of quasi-judicial officers. *See Gammel v. Ernst & Ernst*, 245 Minn. 249, 254, 72 N.W.2d 364, 368 (1955). Arbitrators must be protected from the harassment of personal suits brought against them by dissatisfied parties so that, like judges, they are able to "act upon their convictions free from the apprehensions of possible consequences." *Id.*, 245 Minn. at 254, 72 N.W.2d at 368. The doctrine of arbitral immunity, however, was not designed to protect and indeed does not protect every action of an arbitrator. *Melady*, 142 Minn. at 197, 171 N.W. at 807. Yet when the immunity applies, it is so absolute that it protects the exercise of that essentially judicial authority from civil suit "however erroneous [the actor] may have been." *Id.* The problem presented is whether failure to disclose possible conflicts can be protected as part of the exercise of quasi-judicial authority.

The trial court approached the problem by focusing upon the fundamental differences between the role of an arbitrator and that of a judge. It found that because the arbitrator draws his authority from a private contractual agreement between the parties, breach of those contractual obligations fell outside the exercise of judicial authority and was not protected by arbitral immunity. It considered Michaud's failure to disclose prior contacts a violation of contractual duties to the parties. Therefore, his failure was subject to civil suit and was unprotected by arbitral immunity.

The decisions upon which the trial court relied distinguished between the contractual duty of an arbitrator to decide the issues presented and the judicial function of arriving at the decision made. *Baar v. Tigerman*, 140 Cal.App.3d 979, 982, 211 Cal. Rptr. 426, 428 (1983) (holding that breach of an arbitration contract gave rise to a civil cause of action against arbitrator); *E.C. Ernst, Inc. v. Manhattan Constr. Co.*, 551 F.2d 1026, 1033 (5th Cir.1977) (holding that the failure of an arbitrator to decide the issue before him caused loss of claim to arbitral immunity). Whereas performance of the judicial function in each case received immunity from civil suit, the breach of the contractual provision to reach a decision did not. The issue before this court, however, is not failure to make a decision as required by contract, but whether failure to disclose possible conflicts of interest should be grounds for civil suit against an arbitrator.

■ Failure to disclose possible conflicts of interest creates at the least an impression of bias. An impression of bias contaminates the decision making process when neutrality is essential and is not condoned by this court. Nevertheless, we decline to permit a civil suit against the arbitrator for failure to disclose prior business or social contacts because of our policy of encouraging arbitration and of protecting the independence of the decision made. Permitting civil suit for a lapse in disclosure would chill the willingness of arbitrators to serve because of the difficulty of remembering all contacts, however remote, with parties to the arbitration.

This extension of the grant of immunity does not mean that we are not dismayed by Michaud's failure to disclose the possibility of a conflict of interest. It should have been a simple matter to note that he had had contacts with the parties involved or, in the event he was not certain, at least state that he might have had impermissible contacts. The AAA appointment letter he received clearly stated that any doubts were to be resolved in favor of disclosure. Nevertheless, for the reasons stated, we reverse the decision of the district court denying Michaud's motion for summary judgment and answer the certified question in the affirmative.

Our decision does not leave aggrieved parties remediless, however. Minn.Stat. § 572.19, subd. 1 (1988) provides that "[u]pon application of a party, the court shall vacate an award where * * * [t]here was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party * * *." We believe the proper remedy lies therein rather than in a civil suit against the arbitrator. *Cf. Commonwealth Coatings Corp. v. Continental Cas. Co.*, 393 U.S. 145, 147–50, 89 S.Ct. 337, 338–40, 21 L.Ed.2d 301 (1968) (reversing and vacating award granted under impression of bias on the part of neutral arbitrator).

In the case before us, vacation of the award is exactly what occurred. The trial court vacated the award upon the basis that Michaud had failed to make the requisite disclosure even though the court did not find direct evidence of bias in the decision-making process. The action of remanding for a second arbitration corrected Michaud's error and provided the parties with a new forum free from actual or perceived influence.

■ Although arbitral immunity as we define it today prohibits civil suits against arbitrators for failure to disclose prior business or social contacts, it does not insulate an arbitrator from criminal liability for fraud or corruption. *See, e.g., Earle v.*

*Johnson,* 81 Minn. 472, 475, 84 N.W. 332, 333 (1900). Moreover, an arbitrator is always subject to sanctions imposed by the arbitrator's governing body, which includes disqualification as an arbitrator. AAA Commercial Arbitration Rules, Rules 12, 19.

The second question certified as important and doubtful by the trial court is whether an attorney is subject to tort liability to his client's adversary for allegedly failing to provide information obtained from a client during the course of professional representation in contested proceedings. L & H claims that Rapistan's counsel is liable under tort theories of negligent misrepresentation and fraud for failing to disclose the prior contacts between Michaud and Rapistan and its officers.

■ 3. We turn first to L & H's claim that Rapistan's attorney, Eidsness, is liable for negligent misrepresentation. Although we have recognized the tort of negligent misrepresentation, *Bonhiver v. Graff,* 311 Minn. 111, 121–22, 248 N.W.2d 291, 298–99 (1976),[2] and have clarified that it is an unintentional tort that does not contemplate an intent to deceive on the part of the person making the misrepresentation, *Florenzano v. Olson,* 387 N.W.2d 168, 177 (Minn.1986) (Simonett, J., concurring specially), we have never before considered

whether an attorney can be held liable to his client's adversary for commission of the tort.[3] The answer depends in the first analysis on whether a duty of care is owed. In the present context involving an attorney and his client's adversary, we cannot recognize such a duty. Therefore, L & H's claim against Eidsness must fail.

Under general concepts of tort law, "duty" is defined as an " 'obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another.' " *Rasmussen v. Prudential Ins. Co.,* 277 Minn. 266, 268, 152 N.W.2d 359, 362 (1967) (quoting Prosser, *Torts* § 53 (3d ed. 1964)). An analysis of whether or not a duty of care is owed to a particular plaintiff "begs the essential question—whether the plaintiff's interests are entitled to legal protection against the defendant's conduct." *Prosser & Keaton on Torts* § 53 at 357 (5th ed. 1984). If an attorney owes a duty to his client's adversary, it is because the law recognizes that public policy favors the protection of that person's interests against the attorney's negligent conduct.

In the litigation context, it is understandable that courts have been extremely reluctant to impose a duty upon attorneys to their client's adversary. *See, e.g., Beeck v. Kapalis,* 302 N.W.2d 90, 97 (Iowa 1981);

---

**2.** In *Bonhiver,* we recognized the tort's formulation as stated in The Restatement (Second) of Torts § 552 (Tent. Draft No. 12). The most recent definition appears as follows:

§ 552. Information Negligently Supplied for the Guidance of Others

(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

  (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

  (b) through reliance upon it in a transaction that he intends the information to influ-

ence or knows that the recipient so intends or in a substantially similar transaction.

(3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.

The Restatement (Second) of Torts § 552 (1976).

**3.** Although the count in the complaint was one of negligent misrepresentation, the actual provision against Eidsness alleged that "Eidsness made negligent representations *by omission*" when he failed to disclose Rapistan's prior contacts with Michaud. (Emphasis added). Whether a negligent representation by omission is equivalent to a negligent misrepresentation is irrelevant here, because in either case tort liability in negligence depends in the first instance on whether the party accused of the tort owes a duty to the accusing party.

*see also* Annotation, *Attorney's Liability to One Other Than Immediate Client, for Negligence in Connection with Legal Duties,* 61 A.L.R. 4th 615, 625 (1988). Any duty imposed upon an attorney to protect an interest of the client's adversary would necessarily conflict with the duty owed by the attorney to his or her client. *Green Spring Farms v. Kersten,* 136 Wis.2d 304, 329, 401 N.W.2d 816, 826 (1987). The adversarial nature of a lawsuit precludes an attorney from owing concurrent duties of care to his or her client and the client's opponent. A duty to use reasonable care to protect the interests of the client's adversary could prevent an attorney from devoting full energy to the client's interests. An attorney's duty of care is owed to the client and the court, not to the client's opponent.[4]

The issue of whether a duty is owed by an attorney to an adversary party has arisen in other jurisdictions in the context of whether an attorney can be liable to an adversary party for failing to adequately investigate the client's claim before filing a lawsuit. Jurisdictions addressing this issue have rejected the assertion that an attorney owes a duty of care to the adversary party. *See Tappen v. Ager,* 599 F.2d 376, 378–79 (10th Cir.1979); *Parnell v. Smart,* 66 Cal.App.3d 833, 837–38, 136 Cal.Rptr. 246, 248 (1977); *Beecy v. Pucciarelli,* 387 Mass. 589, 597, 441 N.E.2d 1035, 1040–41 (1982); *Friedman v. Dozorc,* 412 Mich. 1, 16, 22–30, 312 N.W.2d 585, 588, 590–94 (1981); *Tipton v. Willamette Subscription Television,* 85 Or.App. 79, 83, 735 P.2d 1250, 1252 (1987).

The plaintiff in the present case is claiming in effect that Eidsness owed a similar duty to independently investigate the assertions of his clients that they had no prior contacts with the arbitrators to determine whether those assertions were true and then communicate that information to the adversary. We cannot recognize such a duty. It would undermine the attorney's duty to zealously represent the client and resolve all doubts in favor of the client. It would also undermine the trust between the attorney and client, which is an essential element of the relationship. Thus, we hold that Eidsness owed no duty of care to L & H, and therefore cannot be liable to L & H for failing to discover or communicate to them that his clients had social and business contacts with the arbitrator Michaud.

■ 4. We turn next to the asserted claim of fraud against Eidsness. In their amended complaint, L & H alleged that Eidsness knew that Rapistan and some of its officers had business and social contacts with the arbitrator Michaud prior to the arbitration hearing, including the fishing trip which allegedly occurred one month before the hearing, and that Eidsness "intentionally concealed" his knowledge of those contacts and "allowed the arbitration to continue without disclosing the true facts, and subsequently made a motion with the court to confirm the arbitration award." This particular theory of fraud is too broadly stated. After a careful examination of the complaint, taking the facts alleged by L & H as being true, it must be concluded that the fraud alleged by the complaint is based solely on nondisclosure. Nowhere is it claimed that Eidsness affirmatively misrepresented that his client had no prior contacts with Michaud, nor are there any facts supporting an allegation that Eidsness actively took steps to conceal the facts of the prior relationships. During the original arbitration hearing, L & H entered a stipulation in which it agreed to allow the claims it had against corporate

---

**4.** Our own case law has recognized that an attorney owes no duty of care to his client's opponent. *Farmer v. Crosby,* 43 Minn. 459, 461, 45 N.W. 866, 866 (1890), *overruled on other grounds, Erickson v. Minnesota & Ontario Power Co.,* 134 Minn. 209, 215, 158 N.W. 979, 981 (1916). In *Farmer,* an attorney directed a sheriff to execute a judgment which the attorney had won for his client. The judgment was later vacated, but the attorney failed to recall the sheriff before he had made a levy on the adversary's property. This court ruled that the attorney could not be liable for negligence to his client's opponent, but could be liable only for malicious prosecution or fraud. *Id. See also Hoppe v. Klapperich,* 224 Minn. 224, 241, 28 N.W.2d 780, 791–92 (1947) (attorney is not liable to his client's adversary for instituting criminal proceedings unless attorney is motivated by fraud or malice).

officers of Rapistan to also be arbitrated. L & H claims that it entered this stipulation only after receiving assurances from Rapistan and its officers that they had no contacts with any of the arbitrators. Eidsness simply did not disclose to L & H his alleged knowledge of the prior contacts. Thus if Eidsness is liable, it is for failing to disclose his alleged knowledge of the prior contacts his clients had with Michaud.

Nondisclosure does not constitute fraud absent a "legal or equitable obligation" to communicate facts to a particular person and that person is entitled to that information. *Richfield Bank & Trust v. Sjogren*, 309 Minn. 362, 365, 244 N.W.2d 648, 650 (1976). The general rule is that "one party to a transaction has no duty to disclose material facts to the other." *Klein v. First Edina Nat'l Bank*, 293 Minn. 418, 421, 196 N.W.2d 619, 622 (1972). A duty to disclose facts may exist under certain circumstances, such as when a confidential or fiduciary relationship exists between the parties or when disclosure would be necessary to clarify information already disclosed, which would otherwise be misleading. *Id.; see also* Restatement (Second) Torts § 551 (1976). We have also stated that "[o]ne who has special knowledge of material facts to which the other party does not have access may have a duty to disclose these facts to the other party." *Klein*, 293 Minn. at 421, 196 N.W.2d at 622. However, we have rarely addressed that particular theory of fraud. In *Richfield Bank & Trust*, we held that it was fraud for a bank to not disclose to a borrower that a bank depositor with whom the borrower was dealing was insolvent and was engaging in fraudulent business practices when the bank had actual knowledge of the fraudulent activities. *Id.,* 309 Minn. at 369, 244 N.W.2d at 651. We said that the bank had a duty to disclose facts within its knowledge to prevent one of its depositors from committing a fraud on the community. *Id.* We believe, however, that this particular theory is an inappropriate basis for imposing liability on an attorney for failing to disclose known facts to his client's adversary in a litigation context.

In the present case, Eidsness, as an attorney, may have had an ethical duty to disclose the prior contacts between his client and the arbitrator. *See* Minn.R. Prof.Conduct 3.3(a)(2) ("A lawyer shall not knowingly * * * fail to disclose a fact to a tribunal when disclosure is necessary to avoid assisting a * * * fraudulent act by the client"). However, an ethical duty of disclosure is not intended to run to the personal benefit of an attorney's adversary. Rather, the duty of disclosure is for the benefit of the tribunal and is an obligation imposed upon an attorney to aid the administration of justice. *See Hoppe v. Klapperich*, 224 Minn. 224, 240–41, 28 N.W.2d 780, 791 (1947). This duty to disclose cannot be the basis for imposing civil liability on an attorney. A violation of the Rules of Professional Conduct cannot give rise to a private action against an attorney. *See* Scope, Minn.R.Prof.Conduct; *see also Garcia v. Rodey, Dickason, Sloan, Akin & Robb, P.A.*, 106 N.M. 757, 750 P.2d 118, 123 (1988). The Rules are intended to discipline attorneys, not provide a basis for civil liability. Thus we conclude that although Eidsness may have been under an ethical duty to disclose to the tribunal his client's prior contacts with Michaud, his failure to disclose those contacts to his client's adversary was not actionable fraud, because Eidsness owed no direct duty of disclosure to L & H on which civil liability could be based.

We do not intend by this decision to insulate an attorney from liability to his or her adversary for fraud. An attorney who makes affirmative misrepresentations to an adversary, or conspires with his or her client, or takes other active steps to conceal the client's fraud from the adversary may be liable for fraud. *See Hoppe*, 224 Minn. at 241, 28 N.W.2d at 791; *see also McDonald v. Stewart*, 289 Minn. 35, 40, 182 N.W.2d 437, 440 (1970). However, merely failing to disclose a client's fraud to the adversary will not make the attorney liable, absent a duty on the attorney to make such a disclosure. The Rules of Professional Conduct are sufficient to deter attorneys from perpetrating fraud of this

nature. Also, the adversary party is not without a remedy. He or she can pursue a fraud action against the person actually causing the loss: the attorney's client who may have made an intentional misrepresentation. Personal liability against the attorney is not warranted. The second certified question is answered in the negative.

Affirmed in part, reversed in part and dismissed.

YETKA, COYNE AND KELLEY, J.J. dissent.

YETKA, Justice (concurring in part and dissenting in part).

I respectfully dissent. Although I concur with part 1 of the majority opinion, I would affirm the trial court's decision in its entirety because the egregious acts of the defendants cut to the heart of the integrity of the entire judicial process. Moreover, it is my belief that the majority decision will weaken the ethical rules that govern our profession at a time when, if anything, the requirements of high ethical standards should be strengthened.

According to the majority, arbitrators may now conceal impermissible social or business contacts free of the prospect of personal liability to the parties in the arbitration. This result is wrong because (1) the arbitrator's duty to disclose relationships with parties to the arbitration is not a discretionary decision entitled to arbitral immunity and (2) this disclosure is part of the preliminary administrative function of selecting an arbitrator and is, therefore, not entitled to arbitral immunity.

This court has granted arbitral immunity where:

> some contractual provision [has] called for the exercise of independent judgment or discretion by a person acting as an arbitrator and which made his determination binding upon the parties selecting him. But in the absence of such contractual provisions, or where the agreement does not call for the exercise of judicial authority, ordinarily the person selected to perform skilled or professional servic-

es is not immune from charges of negligence * * *. 

*Gammel v. Ernst & Ernst*, 245 Minn. 249, 255, 72 N.W.2d 364, 368 (1955).

The AAA Commercial Arbitration Rules do not allow neutral arbitrators discretion as to what relationships the arbitrator should disclose; they mandate disclosure. Rule 19 provides:

> A person appointed as neutral Arbitrator *shall disclose* to the AAA any circumstances likely to effect [sic] impartiality, including * * * *any past or present relationship with the parties* or their counsel. * * * Thereafter, the AAA shall determine whether the Arbitrator should be disqualified * * *.

AAA Commercial Arbitration Rule 19 (effective April 1, 1982) (emphasis added).

AAA correspondence clearly informs arbitrators of this requirement. For example, the July 9, 1982 letter inviting Michaud's acceptance stated:

> If you * * * have had no association with either of the parties or their representatives which would disqualify you from serving, please execute * * * the enclosed Notice of Appointment * * *.

Moreover, the Notice of Appointment enclosed with the July 9, 1982 letter contained the following admonition:

> It is most important that the parties have complete confidence in the Arbitrator's impartiality. Therefore, please disclose any past or present relationship with the parties or their counsel, direct or indirect, whether financial, professional, social or other kind. Any doubt should be resolved in favor of disclosure. If you are aware of such a relationship, please describe it on the back of this form. The AAA will call the facts to the attention of the parties' counsel.

Continued appointment as an arbitrator pursuant to the Commercial Rules of Arbitration is contingent upon disclosure of relationships with the parties. It is not within the arbitrator's discretion to conceal, rather than disclose, relationships with parties or counsel. Thus, under Minnesota

law, arbitral immunity does not shield an arbitrator from liability for neglecting this duty to disclose.

The standard for arbitral immunity is related to the scope of judicial immunity. Judicial immunity is defined by the functions it protects; that is, immunity insulates a judge from liability for judicial acts rather than administrative, legislative, or executive functions. *Forrester v. White,* 484 U.S. 219, 108 S.Ct. 538, 544, 98 L.Ed.2d 555 (1988). Requiring an arbitrator to disclose associations with parties to the arbitration before undertaking an assignment has nothing to do with immunity once deliberations begin. *See Grane v. Grane,* 143 Ill.App.3d 979, 98 Ill.Dec. 91, 493 N.E.2d 1112 (App.Ct.1986) (arbitrator who fraudulently induces another to enter into an arbitration agreement is not protected by arbitral immunity). This information is needed to decide whether the arbitrator should act at all. This preliminary disclosure requirement is a component of the administrative function of selecting an arbitrator. *See Baar v. Tigerman,* 140 Cal.App.3d 979, 987, 211 Cal.Rptr. 426, 431 (Ct.App.1983) (liability for negligent selection of arbitrator not protected by arbitral immunity because selection is administrative function). Thus, arbitral immunity does not shield an arbitrator from liability for neglecting this essential administrative function.

Holding the arbitrator personally responsible for disclosure would not defeat the policy of encouraging arbitration as the majority fears. Indeed, as the United States Supreme Court notes:

> [W]e should, if anything, be even more scrupulous to safeguard the impartiality of arbitrators than judges, since the former have completely free reign to decide the law as well as the facts and are not subject to appellate review. We can perceive no way in which the effectiveness of the arbitration process will be hampered by the simple requirement that arbitrators disclose to the parties any dealings that might create an impression of possible bias.

*Commonwealth Coatings Corp. v. Continental Casualty Co.,* 393 U.S. 145, 149, 89 S.Ct. 337, 339, 21 L.Ed.2d 301 (1968).

I would affirm the decision of the district court denying Michaud's motion for summary judgment and answer the first certified question in the negative. As to the conduct of Attorney Eidsness, I adopt the views expressed in the dissent of Justice Coyne.

COYNE, Justice (dissenting in part).

I agree with the majority's disposition of the actions against Rapistan, Manning, and Michaud, and of the count against Eidsness alleging negligent misrepresentation. I am of the opinion, however, that this court cannot countenance intentional fraudulent misrepresentation and would, therefore, deny summary judgment with respect to the fraud count lodged against Eidsness.

L & H Airco, Inc.'s action against Eidsness rests on an underlying disputed fact— that L & H Airco made the absence of any acquaintance between the officers of Rapistan Corp. and the arbitrators an express condition for L & H Airco's entry into a stipulation to include Manning and other Rapistan officers as additional defendants in the arbitration proceeding. It strikes me that expressly conditioning a stipulation for the inclusion of additional individual defendants on their being unacquainted with the arbitrator would be highly unusual, but if the stipulation was indeed made on that condition, then it seems to me that Eidsness had a duty not to fraudulently misrepresent that the condition had been met. In other words, if Eidsness knew that Michaud had worked for Rapistan and had gone fishing with Manning and other corporate officers, he breached a duty of fairness to the adversary by entering into the stipulation on his client's behalf because a lawyer's execution of the agreement carries with it an implicit representation that it is the client's position that the condition is met and that the lawyer does not personally know otherwise. If a lawyer enters into such a stipulation knowing that the condition is not and cannot be met, it seems to me that the lawyer's conduct has

gone far beyond a lawyer's obligation to the client and that concealment of the information which makes performance of the condition impossible amounts to intentional fraudulent misrepresentation.

If, on the other hand, Manning told Eidsness that Manning and Michaud were not acquainted, then Eidsness did not breach a duty to the adversary because, as the majority observes, a lawyer has no duty to decide whether the client is truthful. The representation implicit in the lawyer's execution of the stipulation is only that the stipulation is consonant with the position of the client and the lawyer has no personal knowledge to the contrary. Thus, the count alleging negligent misrepresentation should be dismissed.

Finally, if the underlying fact does not exist—if the stipulation was not expressly conditioned on the absence of any acquaintance between the officers of Rapistan and the arbitrators, there can be no liability regardless what the lawyer knew, for the lawyer has no affirmative duty to protect the interest of the client's adversary. The absence, however, of any affirmative duty to ferret out and disclose information to the adversary does not, in my view, excuse a lawyer's deliberately misleading the adversary by fraudulent misrepresentation whether the misrepresentation is explicit or implicit.

KELLEY, Justice (dissenting).

I join the dissent of Justice COYNE.