### FRANCIS C. McDONALD v.
### JEAN STEWART AND OTHERS.
### WILLIAM E. CROWDER, RESPONDENT.

182 N. W. (2d) 437.

December 18, 1970—No. 42465.

---

*W. L. Sholes,* for appellant.
*William E. Crowder,* pro se, for respondent.

Heard before Knutson, C. J., and Nelson, Murphy, Peterson, and Rosengren, JJ.

PETERSON, JUSTICE.

Plaintiff, Francis E. McDonald, appeals from a summary judgment dismissing his claim against defendant, William E. Crowder, an attorney, for tortious interference with a contractual relationship between plaintiff and defendant's client, Shirley Marie Twigg.

Miss Twigg, who inherited her father's homestead, entered into a written purchase agreement on April 29, 1966, for the sale of that property to plaintiff for a price of $10,000. She was represented in that transaction by Horace Van Valkenburg, who was the attorney in the probate proceedings. On or about May 23, 1966, however, she repudiated the agreement. Van Valkenburg thereupon notified the real estate broker of that fact and terminated his professional relationship with Miss Twigg. On July 8, 1966, plaintiff filed a summons and complaint against Miss Twigg in Hennepin County District Court asking specific performance of the purchase agreement and damages for breach, contemporaneously filing a notice of lis pendens with the register of deeds. Service of process, however, was not completed within 6 months thereafter, which, by terms of the purchase agreement, apparently deprived him of the right to enforce the contract by specific performance.

Meanwhile, on July 19, 1966, Miss Twigg executed a warranty deed conveying subject property to one Jean Stewart, which deed

was duly recorded. And, contemporaneous therewith, Mrs. Stewart and her husband executed an unrecorded collateral agreement providing for reconveyance of title by them to Miss Twigg upon being reimbursed for funds advanced and to be advanced by them to her, and providing, further, that, after the passage of a "reasonable time," Mrs. Stewart could, at her option, retain the property upon payment to Miss Twigg of the difference between $10,000 and the unpaid advancements.

The litigation arises out of the particular circumstances in which the transaction occurred, as disclosed by the pleadings and various affidavits and depositions incident to defendants' motion for summary judgment. It is undisputed that Miss Twigg and the Stewarts were longtime friends and neighbors and that defendant Crowder had from time to time performed professional services for both the Stewarts and Miss Twigg's deceased father. It is undisputed that the Stewarts and Crowder were aware of the lis pendens that had been filed by plaintiff. It is undisputed that the property was subject to a mortgage balance of $3,700 and that the revenue stamps upon the deed from Miss Twigg to the Stewarts reflected a consideration of $7,500. It is undisputed that Miss Twigg was a person of limited capacity, who experienced difficulty in maintaining remunerative employment and in managing her affairs, with the result that she was in serious financial straits. Her taxes were unpaid, her mortgage was delinquent, and she had other substantial bills outstanding. Mrs. Stewart, according to her uncontroverted statement in a discovery deposition, had advanced for Miss Twigg the aggregate sum of $5,093.21 to pay these obligations, together with a fee in undisclosed amount for defendant Crowder's professional services in the transaction.

Plaintiff, with the unarticulated implication that the deed and reconveyance agreement with the Stewarts was disadvantageous to Miss Twigg, generally alleges that she executed those documents because of the misrepresentations and threats of defendant Crowder and the Stewarts, allegations they vigorously deny.

The only threat specifically alleged is that "if she did not sign the two papers a guardian would be appointed for her and she would be put in a rest home." The specific misrepresentation alleged is that defendant Crowder "told her she should sign for her own protection." Miss Twigg, in an affidavit apparently prepared by plaintiff's attorney, subsequently stated that defendant Crowder and the Stewarts told her that she "should not go through with the sale to [plaintiff]."

Plaintiff commenced an action against both the Stewarts and Crowder, supplementing his prior action against Miss Twigg. As against defendant Crowder, the action seeks to recover damages for an alleged wrongful interference with the contractual relationship between plaintiff and Miss Twigg. As against the Stewarts, the action seeks both damages and an order either revesting title to the property in Miss Twigg or vesting it in plaintiff.

The trial court having granted summary judgment in defendant Crowder's favor, the question for decision is whether the pleadings and the sworn statements incident to defendants' motion for summary judgment, considered in a light most favorable to plaintiff, presents any genuine issue of material fact with respect to plaintiff's claim against Crowder.

■ The materiality of the disputed facts must be considered in relation both to the general theory of plaintiff's claim and to the specific status of the defendant attorney in the challenged transaction. The situation in this case is markedly different from the usual situation in which claims for interference with contractual relationships of others have been sustained, exemplified in the two cases upon which plaintiff relies: Sorenson v. Chevrolet Motor Co. 171 Minn. 260, 214 N. W. 754; and Johnson v. Gustafson, 201 Minn. 629, 277 N. W. 252. These differences stem mainly from the professional status of this defendant in the challenged transaction.

A first distinction is that there is no intimation whatever in the pleadings or sworn statements that Miss Twigg's withdrawal

from her contract with plaintiff was of any personal benefit to defendant Crowder. The crux of the claim in both Sorenson and Johnson was that the alleged tortfeasor had derived a direct benefit to himself at the expense of the wronged plaintiff.

Similarly, a second distinction is that defendant Crowder's relationship to plaintiff, a stranger, was an impersonal one. His alleged actions raise no inference of malicious motivation. In Sorenson the critical allegation was that the alleged tortfeasor had a dual purpose of maliciously destroying a competitor and of deriving the benefit of the interrupted contractual relationship for himself. In Johnson the evidence established that the defendant induced a breach of contract between plaintiff real estate broker and a listed property owner for the purpose of defrauding the broker of her earned commission so as to purchase the property for himself at a reduced price. We are unaware of any case in which it has been held that an attorney who, without ulterior motive, advises a client to convey to a third person rather than to a prior contract vendee may be held liable in damages to the latter.

It is by no means clear, moreover, that defendant Crowder counseled a breach of contract prior to its unilateral repudiation by Miss Twigg. Her controverted statement that defendant Crowder and the Stewarts "told me that I should not go through with the sale to Mr. McDonald" was obviously in the context of the conversation attendant upon the execution of the warranty deed to the Stewarts, which was subsequent to the original breach of contract. Van Valkenburg's affidavit states that, to the best of his knowledge and information, Miss Twigg "determined not to go through with the contract for sale as her own decision."

The main thrust of the complaint, a third distinction, is an assertion of an alleged claim of Miss Twigg against her own attorney, which is foreign to a third person's claim for interference with his contractual relationship with that client. The complaint alleges, in substance, that Miss Twigg was "the victim"

of an arrangement imposed upon her by the misrepresentations and coercion of her own attorney, concluding that "both the plaintiff and Shirley Marie Twigg have been damaged by the acts of the defendants herein who are the parties who should be held responsible for said damages in lieu of Shirley Marie Twigg." These controverted allegations, serious as they may be to the professional reputation of an attorney, do not of themselves state a claim in favor of a stranger to that professional relationship.

■ The more determinative principle for this case is, as the trial court concluded, that an attorney acting within the scope of his employment as attorney is immune from liability to third persons for actions arising out of that professional relationship. This immunity, to be sure, may not be invoked if the attorney, exceeding the bounds of this unique agency relationship, either is dominated by his own personal interest or knowingly participates with his client in the perpetration of a fraudulent or unlawful act. See, Hoppe v. Klapperich, 224 Minn. 224, 28 N. W. (2d) 780; see, also, Farmer v. Crosby, 43 Minn. 459, 45 N. W. 866. We agree with the trial court's conclusion that there is no genuine issue of fact as to the application of defendant's general immunity.

Affirmed.