# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 12-1398

———————————————

Kevin M. Murphy and Kathleen K. Murphy,
James L. Lang, Charlene Ann Brady, Erika
R. Hogenson, Harold J. Thompson, III,
Julianne Thompson, Miriam E. Stone,
Jeffrey A. Kirschbaum, Tou A. Vang and
May K. Vang

*Plaintiffs - Appellants*

v.

Aurora Loan Services, LLC, Aurora Bank FSB,
Mortgage Electronic Registration Systems, Inc.,
Merscorp, Inc., and Wilford & Geske, P.A.

*Defendants - Appellees*

——————————

Appeal from United States District Court
for the District of Minnesota - Minneapolis

——————————

Submitted: October 15, 2012
Filed: November 8, 2012

——————————

Before RILEY, Chief Judge, ARNOLD and GRUENDER, Circuit Judges.

——————————

GRUENDER, Circuit Judge.

The plaintiffs are all Minnesota homeowners ("Homeowners") who borrowed money for the purpose of purchasing a home. Each signed a promissory note, promising to repay the loan. As security for the promise they executed a mortgage on which Mortgage Electronic Registration Systems, Inc. ("MERS")[1] was the nominal mortgagee. The various lenders holding the Homeowners' promissory notes then pooled, securitized, and sold them in the secondary market. MERS subsequently assigned each mortgage to Aurora Loan Services, LLC and Aurora Bank FSB (collectively "Aurora"). After the Homeowners defaulted on their repayment obligations, Aurora retained the legal services of Wilford & Geske, P.A. ("W&G") to aid them in foreclosing on the properties pursuant to Minnesota's foreclosure-by-advertisement statute. The Homeowners do not contest the validity of their initial mortgage agreements, nor do they contest their subsequent defaults. Rather, they allege that neither Aurora nor MERS is entitled to foreclose on the properties and that W&G knowingly made false representations regarding Aurora's authority to foreclose.

In their complaint initially filed in state court, the Homeowners set forth a host of reasons why Aurora and MERS lacked the authority to foreclose and, among other claims, brought suit to quiet title. After Aurora and MERS removed the action to federal court based on the allegedly fraudulent joinder of W&G, the district court denied the Homeowners' motion to remand and dismissed all of their claims with prejudice. The district court viewed the complaint as articulating nothing more than repackaged versions of the "show-me-the-note" theory, which argues the holder of legal title to a mortgage cannot foreclose if he is unable to produce the underlying

---

[1] Homeowners also sued MERSCORP, Inc., the record custodian for the system. "MERS" refers collectively to both entities. MERS involves an electronic registration system wherein lenders can transfer interests in promissory notes to each other, while MERS remains the mortgagee of record despite the assignment of the debt. *See Jackson v. Mortg. Elec. Registration Sys., Inc.*, 770 N.W.2d 487, 490-91 (Minn. 2009).

promissory note. *See Stein v. Chase Home Fin., LLC*, 662 F.3d 976, 978-79 (8th Cir. 2011). The Minnesota Supreme Court definitively rejected the viability of this theory in *Jackson*, as we recognized in *Stein*. *See Stein*, 662 F.3d at 979-80; *Jackson*, 770 N.W.2d at 500-01. On appeal, the Homeowners contest the district court's exercise of subject matter jurisdiction. They also insist their theories of recovery do not run afoul of *Jackson* because their challenges to the authority of Aurora and MERS to foreclose are not premised on a failure to produce their promissory notes. We affirm the district court's dismissal of W&G as fraudulently joined. We partially reverse as to the dismissal of the quiet-title cause of action, but we affirm the dismissal with prejudice of all of the Homeowners' remaining claims.

I.

Although nominally the Homeowners lack complete diversity with W&G, Aurora and MERS removed this suit to federal court based on the allegedly fraudulent joinder of W&G. A party has been fraudulently joined if there is "no reasonable basis in fact and law" for the claim brought against it. *Filla v. Norfolk S. Ry. Co.*, 336 F.3d 806, 810 (8th Cir. 2003) (quoting *Wiles v. Capitol Indemnity Corp.*, 280 F.3d 868, 871 (8th Cir. 2002)). The doctrine of fraudulent joinder allows a district court to assume jurisdiction over a facially nondiverse case temporarily and, if there is no reasonable basis for the imposition of liability under state law, dismiss the nondiverse party from the case and retain subject matter jurisdiction over the remaining claims. *See, e.g.*, *Block v. Toyota Motor Corp.*, 665 F.3d 944, 951 (8th Cir. 2011). The district court found that W&G was fraudulently joined, and the Homeowners did not challenge this finding in their opening brief. While we generally will not consider arguments raised for the first time in a reply brief, *Barham v. Reliance Standard Life Ins. Co.*, 441 F.3d 581, 584 (8th Cir. 2006), because this challenge relates to our jurisdiction, we will consider the merits of the claim. We do so under a *de novo* standard of review. *Block*, 665 F.3d at 947.

The district court was correct in determining that all of the Homeowners' claims against W&G lacked a reasonable basis in fact and law, and therefore W&G was properly dismissed as fraudulently joined. Where attorneys act within the scope of their employment, Minnesota law provides protection from liability to third parties. *McDonald v. Stewart*, 182 N.W.2d 437, 440 (Minn. 1970). Absent knowing participation in fraud, none of the work performed by W&G as foreclosing attorney for Aurora can give rise to an actionable claim. *See id.* Minnesota court rules, like the Federal Rules of Civil Procedure, require fraud to be pled with particularity. *See* Minn. R. Civ. P. 9.02. To pierce W&G's professional immunity by adequately pleading fraud, Homeowners must plead the "ultimate facts" of the fraud, which are the "facts underlying each element of the fraud claim." *Hardin Cnty. Sav. Bank v. Hous. & Redevelopment Auth. of Brainerd*, No. A10-1854, 2012 WL 4094350, at *6 (Minn. Sept. 19, 2012).

The Homeowners brought six claims against W&G. Count X pleads negligent misrepresentation, which is "an unintentional tort that does not contemplate an intent to deceive on the part of the person making the misrepresentation." *L&H Airco, Inc. v. Rapistan Corp.*, 446 N.W.2d 372, 378 (Minn. 1989). The very nature of this claim, then, fails to implicate any knowing participation in fraud. Three additional counts—Count V Conversion, Count VII Civil Conspiracy, and Count XII Equitable Estoppel—run into the insurmountable obstacle of stating only "show-me-the-note" claims that have been rejected by *Jackson.*[2]

---

[2]Count V alleges W&G abetted acts of conversion by Aurora and MERS because these entities "were not entitled to enforce the Original Notes." Count VII claims W&G engaged in a civil conspiracy to misrepresent the status of Aurora and MERS as "holders in due course of the Original Notes entitling them to foreclose on Plaintiffs' homes." Count XII claims W&G represented that Aurora and MERS held "valid title to Plaintiffs' Original notes," thereby inducing some of the plaintiffs to forego challenging the legal standing of Aurora and MERS to execute foreclosures.

To the extent the remaining two counts against W&G avoid relying on "show-me-the-note" by alleging defects in the assignment of legal title to the Homeowners' mortgages, these claims nonetheless fail to generate an actionable basis for liability because they do not meet the heightened pleading standard in Minn. R. Civ. P. 9.02. Count IV alleges W&G committed slander of title and Count XI asserts a claim for fraud. Both of these causes of action contain an element requiring the plaintiff to have suffered damages as a result of the defendant's actions. *Davis v. Re-Trac Mfg. Corp.*, 149 N.W.2d 37, 38-39 (Minn. 1967) (defining the elements of fraud); *Kelly v. First State Bank of Rothsay*, 177 N.W. 347, 347 (Minn. 1920) (defining the elements of slander of title). The Homeowners have failed to plead with any specificity the facts underlying these claims. Nothing in the complaint indicates how the Homeowners would have suffered a different fate if the supposed genuine record holder of the mortgage executed the foreclosure in place of Aurora. There is no allegation explaining how W&G's legal services to Aurora could possibly have caused the Homeowners any damage. In short, the Homeowners failed to plead the "ultimate facts" of any fraud-based cause of action and thus failed to assert a claim against W&G under which state law might impose liability. W&G was properly dismissed as fraudulently joined.

The Homeowners also argue the doctrine of prior exclusive jurisdiction bars the district court from exercising subject matter jurisdiction over any of their claims against Aurora, MERS, and W&G. *See Marshall v. Marshall*, 547 U.S. 293, 311 (2006) (citing "the general principle that, when one court is exercising *in rem* jurisdiction over a *res*, a second court will not assume *in rem* jurisdiction over the same *res*"). "We review the question of subject matter jurisdiction de novo." *Myers v. Richland Cnty.*, 429 F.3d 740, 745 (8th Cir. 2005). Leaving aside the question of whether any of the Homeowners' claims can be characterized as *in rem* or *quasi in rem*, the doctrine does not apply to removal actions because the state court loses jurisdiction over a removed suit. *See Ward v. Resolution Trust Corp.*, 972 F.2d 196,

198 (8th Cir. 1992). The district court properly found that it had subject matter jurisdiction.

## II.

The Homeowners argue their quiet-title action[3] remains viable post-*Jackson*, and they contest the dismissal of this claim against Aurora and MERS.[4] A district court's dismissal of a claim under Federal Rule of Civil Procedure 12(b)(6) is subject to *de novo* review. *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007). As part of this review we assume all factual allegations in the pleadings are true and interpret them "in the light most favorable to the nonmoving party." *Cmty. Fin. Grp., Inc. v. Republic of Kenya*, 663 F.3d 977, 980 (8th Cir. 2011). The Homeowners' complaint sought to quiet title based on seven potential defects in Aurora or MERS's ability to foreclose on the mortgages. The district court interpreted each alleged impairment as precluded by *Jackson*'s rejection of the "show-me-the-note" theory and

---

[3]Minnesota provides a statutory cause of action for determining "adverse claims" with respect to land: "Any person in possession of real property personally or through the person's tenant, or any other person having or claiming title to vacant or unoccupied real property, may bring an action against another who claims an estate or interest therein, or a lien thereon, adverse to the person bringing the action, for the purpose of determining such adverse claim and the rights of the parties, respectively." Minn. Stat. § 559.01 (2012).

[4]The complaint included additional claims against Aurora and MERS, but the Homeowners have abandoned them. *See Cormack v. Settle-Beshears*, 474 F.3d 528, 531 (8th Cir. 2007) (noting that a party is considered to have abandoned an issue if he fails to raise a claim on appeal). One group of plaintiffs, the Murphys, obtained new counsel for this appeal and did challenge dismissal of the claims entitled "Defendants Are Not Real Parties in Interest" and "Defendants Do Not Have Legal Standing to Foreclose Mortgages." However, their objections are based on arguments not raised in the district court. We generally do not consider arguments raised for the first time on appeal, and we decline to do so here. *See Orr v. Wal-Mart Stores, Inc.*, 297 F.3d 720, 725 (8th Cir. 2002).

correspondingly dismissed the quiet-title action. Many of the theories underlying the quiet-title claim are indeed regurgitations of the "show-me-the-note" theory. As such, we agree with the district court that these portions of the quiet-title action were properly dismissed. *See Butler v. Bank of America, N.A.*, 690 F.3d 959, 962 (8th Cir. 2012).

However, because two of the quiet-title theories do not rely on the failure of the foreclosing party to produce the note, *see* Compl. ¶ 57(f), (g), we conclude that the district court erred in its wholesale dismissal of the quiet-title claim pursuant to *Jackson*. Under these two theories, assignments from MERS to Aurora of legal title to the mortgages either were unrecorded or executed by individuals lacking the legal authority to do so. The resulting defect in the chain of title of the mortgages, according to Homeowners, deprives Aurora of the authority to foreclose on their properties. In contrast to the complaint in *Butler*, these theories do not rely on the discredited "show-me-the-note" theory.[5] Neither party provided briefing specific to the two remaining quiet-title theories. For instance, it is not clear whether the Homeowners still have any interest in the properties. Minnesota's foreclosure-by-advertisement statute explains that once a sale is recorded and the time period for redemption has passed, "all the right, title, and interest of the mortgagor in and to the premises" is conveyed to the purchaser. Minn. Stat. § 580.12 (2012); *see also Herber v. Christopherson*, 15 N.W. 676, 677 (Minn. 1883). Furthermore, no party has discussed whether the Homeowners' interest is "adverse" to the interest held by MERS or Aurora for purposes of the quiet-title statute, as Aurora claims essentially a security interest in the properties and the Homeowners' complaint concedes that valid security interests in the properties were created and transferred out of the

---

[5]The *Butler* plaintiffs sought to quiet title and compel the defendants to prove their "valid and clear legal title to Plaintiffs' original promissory note." Complaint at 5, *Butler*, 690 F.3d 959 (No. 11-2653). In contrast, the Homeowners' quiet-title claim does not challenge the validity of the mortgages held by Aurora *solely* by attacking Aurora's interest in the underlying promissory note.

Homeowners' bundle of property rights. Although we may affirm a dismissal on grounds not relied upon by the district court, where the parties did not adequately develop an issue, remanding to allow the district court to address the matter in the first instance is appropriate. *See Reeder v. Kan. City Bd. of Police Com'rs*, 733 F.2d 543, 548 (8th Cir. 1984). We leave these and any other issues surrounding the two remaining quiet-title theories for the district court to address.

## III.

The Homeowners request that we alter the dismissal of their remaining claims to be without prejudice. "A district court does not abuse its discretion in failing to invite an amended complaint when plaintiff has not moved to amend . . . ." *Carlson v. Hyundai Motor Co.*, 164 F.3d 1160, 1162 (8th Cir. 1999). Following the dismissal of their claims, the Homeowners never sought leave to file an amended complaint or otherwise indicated how they would make the complaint viable. Dismissal with prejudice is appropriate where a party never "submitted a proposed amended complaint or clarified what one might have contained." *Pet Quarters, Inc. v. Depository Trust & Clearing Corp.*, 559 F.3d 772, 782 (8th Cir. 2009). We find no basis to conclude an opportunity to amend would be anything but futile.

For the foregoing reasons, we partially reverse the district court's dismissal of the quiet-title cause of action, affirm the dismissal of the remaining counts, and remand for proceedings consistent with this opinion.

_____