*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0452**

Elfi E. Janssen, et al.,
Appellants,

vs.

Lommen, Abdo, Cole, King & Stageberg, P. A., et al.,
Respondents,

Sibley Holdings, LLC, et al.,
Respondents.

**Filed December 22, 2014
Affirmed in part, reversed in part, and remanded
Smith, Judge**

Hennepin County District Court
File Nos. 62-CV-13-8745, 27-CV-13-13223

John E. Trojack, Joseph E. Trojack, Trojack Law Office, P.A., West St. Paul, Minnesota (for appellants)

Paul C. Peterson, William L. Davison, Matthew D. Sloneker, Lind, Jensen, Sullivan & Peterson, P.A., Minneapolis, Minnesota (for respondents Lommen, Abdo, Cole, King & Stageberg, P.A., et al.)

Richard J. Thomas Chad J. Hintz, Burke & Thomas, PLLP, Arden Hills, Minnesota (for respondents Sibley Holdings, LLC, et al.)

Considered and decided by Rodenberg, Presiding Judge; Worke, Judge; and Smith, Judge.

**UNPUBLISHED OPINION**

**SMITH**, Judge

We affirm the district court's dismissal of appellant's individual claims under the Minnesota Uniform Fraudulent Transfer Act (MUFTA) because, as a beneficiary of the trust for which the trustee is pursuing relief, appellant lacks individual standing. But we reverse the district court's dismissal of appellant's MUFTA claims in her capacity as trustee and appellant's common-law claims against respondent attorneys because appellant's complaint alleges facts that, if true, state valid claims upon which relief could be granted, and we remand for further proceedings.

## FACTS

In July 2013, appellant Elfi Janssen, both individually and as trustee of the RIJ Revocable Trust Agreement Dated March 16, 2006 (RIJ trust), sued respondents Lommen, Abdo, Cole, King & Stageberg, P.A. (Lommen) and Anna MacCormick, her former husband's daughter. Janssen alleged that, in 2006, her former husband had created RIJ "to satisfy certain obligations arising out of [their] divorce." The trust was funded by four bonds valued at approximately $500,000 and producing about $34,750 in annual income. The trust terms mandated that, upon the death of Janssen's former husband, Janssen and MacCormick would act jointly as co-trustees.

After her former husband revoked the trust in 2008, Janssen sued MacCormick in 2011, alleging undue influence and lack of capacity. In the midst of the trial on these claims—after the district court received testimony that Janssen's former husband was "confused and disoriented" and "rambling and incoherent" when he revoked the trust at

2

the urging of MacCormick—MacCormick created Sibley Holdings, LLC with the assistance of Lommen attorneys who were representing her in the ongoing RIJ trust litigation. Janssen's complaint alleged that MacCormick transferred "virtually all her property to Sibley," including real properties in two Minnesota counties, shares constituting a majority stake in a corporation, all of the assets formerly in the RIJ trust, and other assets. Janssen also alleged that, although MacCormick received less than $500 in consideration for the transfer of each of the real properties to Sibley, the total value of assets she transferred to Sibley was between $1,250,000 and $2,000,000. Janssen alleged that MacCormick became insolvent as a result of these transfers. Janssen further alleged that the purpose of the transfers was to hinder the collection of any judgments against MacCormick.

Janssen alleged that MacCormick maintains control of 97% of Sibley (after transferring a 1% interest to each of MacCormick's three children), that MacCormick functions as the de facto sole member of its governing board, that MacCormick has unilaterally created liens against Sibley assets by writing nearly $600,000 of checks against the Sibley account, and that MacCormick, with the assistance of Lommen attorneys, created two mortgages in favor of Lommen totaling $500,000 against the real properties she transferred to Sibley. On July 13, 2012, the district court found that MacCormick unduly influenced her father, voided the revocation of the trust, and ordered that MacCormick return the trust assets. Janssen alleged that MacCormick's attorney at Lommen subsequently stated that MacCormick was unable to comply with the district court order because those assets were now owned by Sibley, not MacCormick.

3

On May 22, 2013, the district court reformed the RIJ trust's terms, appointing Janssen as sole trustee. Janssen then initiated this action, alleging that MacCormick made fraudulent transfers under the MUFTA, was unjustly enriched, and engaged in theft. She also alleged that Lommen conspired and colluded to fraudulently transfer assets, aided and abetted fraudulent transfers, engaged in fraud, and was unjustly enriched. MacCormick and Lommen moved the district court to dismiss Janssen's MUFTA claims and all of her claims against Lommen, and to stay her remaining claims pending resolution of other related litigation. The district court granted the motions on January 29, 2014. In relevant part, the district court ruled that Janssen lacked individual standing as a trust beneficiary to sue under the MUFTA, that as a trustee she had failed to state a cause of action under the MUFTA, that she had failed to state a cause of action against Lommen for unjust enrichment, conspiracy, collusion, or aiding and abetting, and that she had failed to meet the heightened pleading standard required for her fraud allegations against Lommen.

## DECISION

### I.

"Standing is the requirement that a party has a sufficient stake in a justiciable controversy to seek relief from a court." *State by Humphrey v. Phillip Morris Inc.*, 551 N.W.2d 490, 493 (Minn. 1996). A plaintiff may acquire standing in one of two ways: (1) the plaintiff suffers some "injury-in-fact"; or (2) the plaintiff is granted standing through some legislative enactment. *Id.* A plaintiff who lacks standing may not bring a suit. *Id.* "Whether a party has standing to sue is a question of law, which we review de

4

novo." *Rukavina v. Pawlenty*, 684 N.W.2d 525, 531 (Minn. App. 2004), *review denied* (Minn. Oct. 19, 2004).

Janssen contends that she has statutory standing because, as beneficiary of the RIJ trust, she is a creditor as defined by the MUFTA. *See* Minn. Stat. §§ 513.41(4) (defining "creditor" under the MUFTA), 514.47 (authorizing creditors to sue) (2012). But "beneficiaries of a trust cannot maintain an action at law against a third person who commits a tort or other wrong with respect to the trust property" unless "the trustee fails to bring suit against [the] third party tortfeasor." *Uselman v. Uselman*, 464 N.W.2d 130, 137-38 (Minn. 1990), *superceded by statute on other grounds as recognized by Radloff v. First Am. Nat'l Bank of St. Cloud, N.A.*, 470 N.W.2d 154, 159 (Minn. App. 1991), *review denied* (Minn. July 24, 1991). Here, Janssen is—and has been during all relevant periods[1]—a trustee of the RIJ trust and, in that capacity, she has acted to redress the fraudulent transfers and other wrongs that she alleges occurred. Since the RIJ trustee has not failed to act, we conclude that the district court did not err by dismissing Janssen's individual claims for lack of standing.[2]

---

[1] In her complaint, Janssen states that she was not a trustee for the period during which the allegedly fraudulent transfers occurred, implying that she had no choice but to assert her claims individually. No authority supports her belief that she was not a trustee of the RIJ trust during the relevant periods, and the district court's later holding that Janssen lacks individual standing as trust beneficiary because the trustee has not failed to act necessarily (albeit implicitly) holds that Janssen remained a trustee during all periods relevant to this litigation. MacCormick and Lommen do not challenge that determination and, in fact, endorse it.

[2] Janssen also asserts that this court has already held that she has standing, citing *In re RIJ Revocable Trust Agreement Dated March 16, 2006*, No. A13-1305, 2014 WL 684698, at *2 (Minn. App. Feb. 24, 2014). But, although this prior opinion held that Janssen is an "interested person" with enforceable creditor's rights under the trust, it did

**II.**

Janssen challenges the district court's dismissal of her MUFTA claims for failure to state a claim on which relief can be granted. "We review de novo whether a complaint sets forth a legally sufficient claim for relief. We accept the facts alleged in the complaint as true and construe all reasonable inferences in favor of the nonmoving party." *Walsh v. U.S. Bank, N.A.*, 851 N.W.2d 598, 606 (Minn. 2014) (citations omitted). The purpose of a pleading is "simply to give fair notice to the adverse party of the incident giving rise to the suit with sufficient clarity to disclose the pleader's theory," and a pleader is not "required to allege facts and every element of a cause of action." *N. States Power Co. v. Franklin*, 265 Minn. 391, 394-95, 122 N.W.2d 26, 29 (1963); *see also Walsh*, 851 N.W.2d at 605 (emphasizing that the purpose of the pleading is to notify the opposing party to the *incident* at issue). A plaintiff need only make a "minimal" showing to survive a motion to dismiss for failure to state a claim. *Noske v. Friedberg*, 670 N.W.2d 740, 742 (Minn. 2003). "[A] pleading will be dismissed only if it appears to a certainty that no facts, which could be introduced consistent with the pleading, exist which would support granting the relief demanded." *Franklin*, 265 Minn. at 395, 122 N.W.2d at 29.

"The Minnesota Uniform Fraudulent Transfer Act prohibits a debtor from transferring property with the intent to hinder, delay, or defraud any creditors." *Reilly v. Antonello*, 852 N.W.2d 694, 698 (Minn. App. 2014) (quotation omitted). Its purpose is

---

not consider (let alone override) the *Uselman* requirement that such a creditor may bring an action individually only if the trustee fails to do so.

"to prevent debtors from placing property that is otherwise available for the payment of their debts out of the reach of their creditors." *Id.* at 699 (quotation omitted). "The act is remedial and is meant to be construed broadly." *Id.* (quotation omitted).

Citing Minn. Stat. § 513.45 (2012), MacCormick argues that Janssen's complaint failed to state a claim for relief under the MUFTA because she failed to allege that MacCormick was insolvent. She alleges that her 97% ownership of Sibley disproves any claim that she is insolvent. She further contends that her ownership stake in Sibley means that her movement of trust assets and other assets to Sibley was not a "transfer" under the MUFTA. Under section 513.45, a party alleging a fraudulent transfer must allege either of two sets of conditions. First, a party may allege a fraudulent transfer (1) "if the debtor made the transfer . . . without receiving a reasonably equivalent value," and (2) "the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer." Minn. Stat. § 513.45(a). Second, a party may allege a fraudulent transfer when (1) "the transfer was made to an insider for an antecedent debt," (2) "the debtor was insolvent at the time," and (3) "the insider had reasonable cause to believe that the debtor was insolvent." Minn. Stat. § 513.45(b). "'Transfer' is defined broadly as 'every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance." *Reilly*, 852 N.W.2d at 699 (quoting Minn. Stat. § 513.42(12) (2012)).

Janssen's amended complaint alleges each of the elements required by section 513.45. First, it alleges that MacCormick's transfers were made "without receiving

7

reasonably equivalent value" and it notes that the transfers included trust assets and corporate shares for which MacCormick received no consideration and two parcels of real property each valued at $500,000 for which MacCormick received "$500 or less per property." Second, Janssen alleged that "[a]s a result of the transfers to Sibley, MacCormick is insolvent as defined in the Minnesota Fraudulent Transfers Act," supported by the allegations that "MacCormick transferred virtually all her property to . . . Sibley" and "[d]eeding her non-exempt property, as well as virtually all her other property or assets, to Sibley resulted in MacCormick being insolvent." Finally, Janssen identified Sibley as an "insider" recipient of the transfers. We therefore conclude that Janssen's complaint sufficiently alleges a violation of section 513.45.

MacCormick's claims that her Sibley ownership stake precludes Janssen from alleging a violation of section 513.45 also are belied by three facts either already present in the record or potentially accessible through discovery. First, the record already contains the response from MacCormick's attorney to Janssen's demand for the return of trust assets stating that MacCormick could not return the assets because she no longer owned them after transferring them to Sibley. To assert, as she does now, that she is solvent because she retains ownership of Sibley is, to say the least, disingenuous. Second, even if she retains ownership of the trust assets through Sibley, it is well-established that, for purposes of determining whether a debtor is insolvent within the meaning of the MUFTA, the assets that were allegedly transferred fraudulently are not considered. *See* Minn. Stat. § 513.42(d) (2012). Third, Janssen's complaint alleges that the value of Sibley has been degraded by MacCormick's creation of $600,000 in liens

8

against Sibley and by mortgages in favor of Lommen encumbering the real property held by Sibley.

As the district court recognized, Janssen's complaint alleges violations of the "actual fraud" provisions of Minn. Stat. § 513.44 (2012) in addition to the provisions of section 513.45. Section 513.44(a)(1) mandates that "[a] transfer made . . . is fraudulent as to a creditor . . . if the debtor made the transfer . . . with actual intent to hinder, delay, or defraud any creditor of the debtor." Although it is unclear from her appellate brief whether Janssen continues to pursue this theory, the supreme court has emphasized that a sufficient pleading must identify only the incident in question and need not allege each element of each possible cause of action. *See Walsh*, 851 N.W.2d at 605. In addition to facts relevant to a section 513.45 cause of action, Janssen's complaint alleges specifically that "MacCormick's conveyances were done for the purpose of defrauding [Janssen], and hindering and delaying the collection of any judgments against her." Under the notice-pleading standard that the supreme court reaffirmed in *Walsh*, this is sufficient to put MacCormick and Lommen on notice as to the incident at issue and the potential that Janssen could pursue a cause of action under section 513.44 as well as under section 513.45. We therefore conclude that the district court's dismissal of Janssen's MUFTA claims was erroneous.

### III.

Janssen challenges the district court's basis for dismissing her common-law claims against Lommen, arguing that her amended complaint presents legally sufficient claims for relief. We turn first to Janssen's conspiracy, collusion, aiding-and-abetting, and fraud

9

claims against Lommen. Janssen cites cases holding that attorneys may be held liable for fraud committed by their clients when the attorneys actively engage in a client's fraud. Lommen asserts that no Minnesota caselaw exists supporting the argument that attorneys can be sued for participation in an allegedly fraudulent scheme under the MUFTA. But the MUFTA contains no provision exempting attorneys from liability when they actively participate in a client's scheme to fraudulently transfer assets in order to frustrate collection of a judgment. To the contrary, the supplementary provisions of the MUFTA emphasize that "the principles of law and equity, including . . . law relating to . . . fraud . . . supplement its provisions." Minn. Stat. § 513.50 (2012).

We recognize that "an attorney acting within the scope of his employment as attorney is immune from liability to third persons for actions arising out of that professional relationship." *McDonald v. Stewart*, 289 Minn. 35, 40, 182 N.W.2d 437, 440 (1970). We therefore "narrowly and strictly interpret the elements" of conspiracy, collusion, and aiding-and-abetting claims against professionals in order to "preclude meritless claims." *See Witzman v. Lehrman, Lehrman & Flom*, 601 N.W.2d 179, 186-87 (Minn. 1999). Although we acknowledge that this raises a high bar for Janssen's claims, we also note that the strict-interpretation requirement does not prohibit suing professionals for knowing participation in a client's fraudulent scheme. *Id.*; *see also, e.g.*, *McDonald*, 289 Minn. at 40, 182 N.W.2d at 440 (holding that an attorney's immunity "may not be invoked if the attorney . . . knowingly participates with his client in the perpetuation of a fraudulent or unlawful act"); *Hoppe v. Klapperich*, 224 Minn. 224, 241, 28 N.W.2d 780, 791 (1947) ("In the performance of his duties to his client, an

10

attorney enjoys immunity from liability to a third person insofar as he does not materially depart from his character as a quasi-judicial officer charged with responsibility for the administration of justice. Clearly, he may forfeit his immunity if he permits the private interests and desires of his client to become so dominant that he ceases to be a minister of justice and instead knowingly becomes an instrumentality for the perpetration of fraud . . . ."); *Rucker v. Schmidt*, 768 N.W.2d 408, 412 (Minn. App. 2009) (holding that when an attorney is accused of fraud, "general principles of attorney immunity [are] not appropriate"), *aff'd*, 794 N.W.2d 114 (Minn. 2011). Determining whether Janssen has stated a claim upon which relief could be granted thus requires determining whether the complaint alleges that the attorney knowingly participated in a client's fraudulent act. *See McDonald*, 289 Minn. at 40, 182 N.W.2d at 440.

Janssen's complaint contains such specific allegations. It alleges that Lommen prepared documents creating the Sibley entity and transferring the trust assets to it in the midst of a trial wherein Lommen represented MacCormick in a proceeding seeking to recover those assets. It alleges that this timing was not coincidental or driven by the client's instructions, but rather resulted from Lommen attorneys' expert assessment that MacCormick was likely to lose in light of the testimony that the district court had received. This uniquely suspicious timing and the purported role of Lommen attorneys in hatching the allegedly fraudulent scheme (rather than merely following their client's instructions) could, if proven, support the allegation that Lommen attorneys knowingly participated in a fraudulent or unlawful act. The claim that Lommen attorneys knowingly participated in a fraudulent or unlawful scheme to frustrate a judgment also could be

11

supported by the Lommen attorney's letter stating that the transfer of the trust assets to Sibley made the assets unavailable to satisfy the judgment. We therefore conclude that, under the particular facts of this case, the complaint pleads facts sufficient to clear the high bar set by *McDonald* and *Witzman*.

Janssen's complaint also alleges two alternative bases for Lommen's conspiracy—collusion and aiding-and-abetting liability. First, it alleges that Lommen received mortgages, each valued at $500,000, against property transferred into Sibley in purported payment of legal fees of greatly lesser value, giving Lommen an interest in the fraudulent transfer and placing its attorneys' actions outside the scope of the immunity announced in *McDonald*. *See id.* (stating in a tortious-interference-with-contract case that an attorney is not immune from liability for professional services when those actions are "dominated by his own personal interest"). Although Lommen's alleged knowing participation in transfering trust assets into Sibley might, if proven true, form the basis for its liability for conspiracy, collusion, aiding and abetting, or fraud, we can discern nothing illegal or unlawful in receiving mortgages to secure payment of fees for legal services rendered to a client.

Second, Janssen's complaint alleges that Lommen was "legally and equitably obligated to disclose" the Sibley transfers to the district court and to Janssen, implying that its failure to do so is a basis for collusion liability. Although failure to inform the district court of the transfer of assets central to ongoing litigation may be a relevant fact in a complaint alleging knowing participation in a scheme to frustrate collection of a judgment, we are aware of no authority that requires an attorney to disclose his actions on

12

behalf of a client to opposing parties in litigation or that failure to disclose such actions can form an independent basis for liability.

The district court also ruled that Janssen failed to meet the heightened-pleading standard for fraud claims. "[P]arties pleading fraud must meet a heightened pleading standard." *Hardin Cnty. Sav. Bank v. Hous. & Redevelopment Auth. of Brainerd*, 821 N.W.2d 184, 191 (Minn. 2012) (citing Minn. R. Civ. P. 9.02 requirement that "the circumstances constituting fraud . . . shall be stated with particularity"). "To plead with particularity is to plead the ultimate facts or the facts constituting fraud." *Id.* (quotation omitted). To meet the heightened pleading standard for fraud, the complaint must allege the "who, what, when, where, and how" of a fraud allegation. *Baker v. Best Buy Stores, LP*, 812 N.W.2d 177, 183-84 (Minn. App. 2012), *review denied* (Minn. Apr. 25, 2012). As outlined above, Janssen's complaint meets this requirement. Beyond merely alleging fraudulent intent, the complaint alleges that Lommen attorneys (who) conspired with MacCormick through specific acts (what) alleged to have occurred at specific times (when) and at specific places (where), using specific processes (how) to shield MacCormick's assets from an impending judgment. We therefore conclude that the district court erred when it dismissed Janssen's common-law conspiracy, collusion, aiding-and-abetting, and fraud claims against Lommen.

Unlike Janssen's other claims, her unjust-enrichment claim against Lommen does not rely on its alleged knowing participation in a fraudulent scheme. Rather, Janssen argues that Lommen's receipt of mortgages on property held by Sibley in payment of its legal fees constitutes unjust enrichment. Essential to an unjust-enrichment claim is the

13

allegation that a defendant received some benefit from the plaintiff that the defendant unjustly retained. *Acton Constr. Co. v. State*, 383 N.W.2d 416, 417 (Minn. App. 1986), *review denied* (Minn. May 22, 1986). Here, Lommen received mortgages from MacCormick or Sibley, not from Janssen. Also, "[a] claim for unjust enrichment does not 'lie simply because one party benefits from the efforts or obligations of others, but instead it must be shown that a party was unjustly enriched in the sense that the term 'unjustly' could mean illegally or unlawfully.'" *Dahl v. R.J. Reynolds Tobacco Co.*, 742 N.W.2d 186, 196 (Minn. App. 2007) (quoting *First Nat'l Bank of St. Paul v. Ramier*, 311 N.W.2d 502, 504 (Minn. 1981)), *review denied* (Minn. Jan 20, 2009). The district court properly dismissed Janssen's unjust-enrichment claim against Lommen.

**Affirmed in part, reversed in part, and remanded.**